No. 27,482.

Floyd E. Fischer, as Guardian, etc., *Appellee*, v. Minnie H. Leach, *Appellant*.

(258 Pac. 295.)

SYLLABUS BY THE COURT.

1. Dower—*Inchoate Rights of Dower—Bar by Antenuptial Contract, Separation Agreement and Alimony Decree.* Dower rights to lands in Missouri are waived by an antenuptial contract in which the woman agreed that the property of the husband should be and remain forever his property; that she would sign all papers with her husband necessary for its transfer, and that he should control his property and do with it whatsoever he might wish, the same as if no marriage relation existed; by a separation agreement made while an action by the wife for divorce and alimony was pending, in which agreement she consented that her husband should hold his property free and clear from all her demands and from any interest inheritable or otherwise in the property of her husband; and by a judgment agreed to in open court in the action for alimony decreeing that "the plaintiff is forever barred from setting up any right, title or estate whatsoever in and to said real estate and personal property, whether now owned by the defendant and/or hereafter acquired by him, and from all rights of inheritance and/or dower therein."

2. Divorce—*Separate Action for Alimony—Barring Wife's Right of Dower in Another State.* In an action for alimony, a judgment rendered in accordance with a separation agreement and consented to in open court barring the wife from thereafter claiming dower in her husband's land situated in another state is effective and is binding on the wife in this state.

3. Same—*Separate Action for Alimony—Barring Wife's Right of Dower in Another State.* A judgment barring a wife from claiming dower in her husband's lands situated in another state is within the issues in an action for divorce and alimony where on the trial the prayer for divorce is stricken out and the action remains as one for alimony only.

4. Constitutional Law—*Impairing Obligation of Contract—Due Process of Law—Compelling Conveyance of Dower Right as Agreed.* In an action to enjoin a widow from claiming dower in her deceased husband's lands, situated in another state, an order compelling her to execute a deed and assignment conveying all her dower rights and other interest in and to the land in the other states does not impair the obligation of her separation agreement in violation of section 10 of article 1 of the constitution of the United States, does not deprive her of her property without due process of law in violation of the fourteenth amendment of the constitution of the

Constitutional Law, 12 C. J. pp. 990 n. 54, 57, 1226 n. 77. Divorce, 19 C. J. pp. 289 n. 24, 296 n. 10. Dower, 19 C. J. pp. 457 n. 1, 493 n. 66 *et seq.*, 499 n. 91; 17 L. R. A. n. s. 866; 9 R. C. L. 599. Equity, 21 C. J. pp. 150 n. 51, 61, 151 n. 72, 152 n. 90.

United States, and does not deprive her of the right to go into the courts of Missouri in violation of clause 1 of section 2 of article 4 of the constitution of the United States, under the circumstances described in the first, second and third .paragraphs of this syllabus.

Appeal from Lyon district court; Isaac T. Richardson, judge. Opinion filed July 9, 1927. Affirmed.

*W. C. Harris, Owen S. Samuel,* both of Emporia, and *I. N. Watson,* of Kansas City, Mo., for the appellant.

*D. R. Hite* and *Maurice D. Freidberg,* both of Topeka, for the appellee.

The opinion of the court was delivered by

Marshall, J.: In this action the plaintiff asked for a judgment against the defendant enjoining her from bringing and prosecuting an action in the state of Missouri to establish her claimed dower rights in the Missouri real property which had belonged to her deceased husband; asked for a temporary injunction; and asked that there be embraced within the temporary injunction an order directing that the defendant execute such papers and instruments as may be required by the laws of Missouri to accomplish the waiver and renunciation of all her rights, titles, interests and dower in such real property; that such instruments be deposited with the clerk of the court, and that, on the final determination of the action, they be delivered to the plaintiff for Roderick Leach Fischer and Eleanor Ann Fischer. A temporary injunction was issued, the instruments were ordered executed and deposited with the clerk, and judgment was rendered in favor of the plaintiff according to the prayer of the petition. The defendant appeals.

The defendant and Louis B. Leach entered into an antenuptial marriage contract on June 26, 1911, and were married immediately thereafter. They separated in November, 1925, and in December of that year the defendant commenced an action against Louis B. Leach for a divorce and for alimony. While that action was pending, but before judgment was rendered, the defendant and Louis B. Leach entered into a signed and acknowledged written contract by which the rights of each in the property of the other were adjusted, and by which Louis B. Leach agreed to pay to the defendant $27,500 alimony. After the separation contract was signed, the defendant amended her petition by striking out the prayer for divorce, leaving the prayer for alimony. Both parties asked for judgment in accordance with the separation contract. Judgment was so rendered.

Louis B. Leach subsequently died. The defendant set up a claim of dower in the real property situated in Missouri.

Roderick Leach Fischer and Eleanor Ann Fischer are the grandchildren of Louis B. Leach and his only living descendants. Their guardian, Floyd E. Fischer, prosecutes this action, which was commenced July 10, 1926. A restraining order issued at that time was served on the defendant. On July 23, 1926, on the application of the plaintiff, the court ordered the defendant to—

"Execute and deliver an instrument of writing remising, releasing and forever quitclaiming unto said minors all of the real estate described in the petition herein, to have and to hold the same, with all the rights, immunities, privileges and appurtenances thereto belonging, and unto their heirs and assigns forever, so that neither the said Minnie H. Leach nor her heirs, nor any other person, or persons, for her or in her name or behalf shall or will hereinafter claim or demand any right or title to said real estate or any part thereof, but that they and each of them shall by such instrument and indenture be excluded and forever barred . . . that upon the proper execution and acknowledgment of said instruments of writing that they be deposited with the clerk of this court to abide the further orders of the court in this cause."

The defendant, after being ordered so to do by the court, and after objection, executed an assignment, transfer, and relinquishment to the plaintiff of all her right to the personal property owned by Louis B. Leach at the time of his death, and executed a deed conveying to Roderick Leach Fischer and Eleanor Ann Fischer the real property in Missouri owned by Louis B. Leach at the time of his death. Both instruments were deposited with the clerk of the court.

The antenuptial contract provided in substance that the property of each of the parties thereto should be and remain forever the property of the party then owning it; that each would sign all papers with the other which were necessary for the transfer of any property when sold; and that each should control his property and do with it whatsoever he wished, the same as he could or would if no marriage relation existed between them. The separation agreement provided in substance that the defendant and Louis B. Leach should hold their property free and clear from the demands of each other, and barred each from any interest inheritable or otherwise in the property of the other. The judgment in the action for alimony recited that—

"The plaintiff is forever barred from setting up any right, title or estate whatsoever in and to said real estate and personal property, whether now

owned by the defendant, or hereafter acquired by him, and from all rights of inheritance, and/or dower therein."

In the present action the court made extensive findings of fact and conclusions of law. The findings embraced the facts above set out. Those findings of fact, the conclusions of law thereon, the antenuptial contract, the separation agreement, and the judgment in the action for alimony are such that it is difficult to make a correct condensed statement of them so as to give their true meaning and effect. For that reason, omitting the descriptions of property, they are attached as an appendix to this opinion and made a part of it.

1. The defendant contends that she has not waived her dower interest in the Missouri real estate of her deceased husband. So far as this action is concerned, dower may be defined as "the provision which the law makes for a widow out of the lands or tenements of her husband, for her support and the nurture of her children." (1 Bouvier 932.) Until the death of her husband, the defendant's right of dower was inchoate. Concerning the inchoate right of dower, 19 C. J. 493 says:

"The inchoate right of dower is neither a title, nor an estate in land, nor a lien upon the husband's land, nor a personal claim against the husband. It confers upon the wife no right of possession or control of the land to which it attaches. Some decisions deny that it is even an interest in land, and describe it as a mere possibility of a future interest. But generally the inchoate right of dower is regarded as a subsisting, separate, and distinct interest, of such a nature that the wife may maintain a separate action for its protection, and which attaches as soon as there is a concurrence of marriage and seizin."

The right of dower can be released, relinquished, waived or conveyed.

The defendant in her answer pleads section 315 of the Revised Statutes of Missouri of 1919, as follows:

"Every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate in inheritance at any time during the marriage to which she shall not have relinquished her right of dower in the manner prescribed by law to hold and enjoy during her natural life."

She also pleads section 2175 of the Revised Statutes of Missouri of 1919, as follows:

"A husband and wife may convey the real estate of the wife and a wife may relinquish her dower in the real estate of her husband by their joint deed acknowledged and certified as herein provided."

She argues that neither the antenuptial contract, nor the separation agreement, nor the judgment of the district court in the alimony

Fischer v. Leach.

case, conform to the statutes of Missouri concerning relinquishment of dower. By both the antenuptial contract and the separation agreement the defendant attempted to release, waive and relinquish every right which she then had or thereafter might obtain in her husband's property. Those agreements, although neither specifically named dower, were comprehensive enough to include that interest of the defendant in the property of her husband. When the judgment in the action for alimony was rendered at her request in accordance with the separation agreement, she, through her counsel, in open court expressly consented that the judgment should bar her dower right to the property in Missouri. A judgment entered in that manner is a most solemn form of contract.

In 19 C. J. 499 it is said:

"If in an action to which the wife is a party facts are alleged as a bar to the wife's right of dower, the judgment therein based upon such facts precludes a subsequent assertion of her rights; but it is otherwise if the wife's right of dower is not in issue in the action; and as a rule she will not be precluded by judgments in actions to which she is not a party."

By the antenuptial contract, the separation agreement and the judgment rendered in the action for alimony, the defendant waived all of her dower rights to the Missouri lands of her husband.

2. Another contention of the defendant is that the judgment in the action for alimony could not have any effect outside of the state of Kansas, and for that reason could not deprive the defendant of her dower rights in the state of Missouri. It may be conceded that the judgment cannot have any effect on the title to real property outside of the state of Kansas, but it has full effect in this state. The defendant and her husband lived in Kansas at the time the judgment was rendered. The district court of Lyon county then had jurisdiction of both of them. They were in court, the defendant in person and by counsel. The court had jurisdiction to render judgment settling all rights of each of them in the property of the other.

In *Meador v. Manlove*, 97 Kan. 706, 156 Pac. 731, this court said:

"Where a court of general jurisdiction has secured jurisdiction of the parties who hold the legal title to land in another state, it may render a judgment to impress a trust as to such land and order the trustees to execute a conveyance thereof; and the possible difficulties which may attend the enforcement of its judgment do not in any wise abridge its jurisdiction."

In *Caldwell v. Newton*, 99 Kan. 846, 848, 163 Pac. 163, this court said:

"It is well settled that actions involving title and possession of real property are local in character and can be tried only in the state wherein the land lies, but it is equally well settled that, jurisdiction having been acquired, equitable relief may be afforded without regard to the location of the subject matter where it is enforceable against the person of the defendant."

This is not a new principle; it has often been applied. See, also, *Zane v. Vawter*, 102 Kan. 887, 172 Pac. 37, and the cases cited in *Caldwell v. Newton*, 99 Kan. 846, 848, 163 Pac. 163.

3. The defendant contends that the judgment in the divorce action barring her dower rights was outside the issues presented by the pleadings in that case, and for that reason is void. In that action the petition was an ordinary one for divorce and alimony; the petition was amended by striking out the prayer for divorce. That did not change the issues so far as the property of the plaintiff and the defendant in that action was concerned. Judgment was rendered on the pleadings under the separation agreement and effectively bound the parties thereto. . The judgment is not void.

4. The defendant argues that compelling her to execute the assignment and relinquishment of her rights to the personal property of her deceased husband and in compelling her to execute the deed conveying to Roderick Leach Fischer and Eleanor Ann Fischer all her rights and interest in and to the land in Missouri impairs the obligation of the separation agreement in violation of section 10 of article 1 of the constitution of the United States, deprives her of her property without due process of law in violation of the fourteenth amendment of the constitution of the United States, and deprives her of the right to go into the courts of Missouri, in violation of clause 1 of section 2 of article 4 of the constitution of the United States.

We quote from the headnotes to *Selover-Bates & Co. v. Walsh*, 226 U. S. 112, as follows:

"With the ruling of the state court as to the applicability of a state statute to a particular contract this court has nothing to do. It is concerned only with the question of whether as so applied the law violates the federal constitution.

"The court may, through action upon, or constraint of, the person within its jurisdiction, affect property in other states.

"The obligation of a contract is the law under which it was made, even though it may affect lands in another state; and in an action which does not affect the land itself but which is strictly personal, the law of the state where the contract is made gives the right and measure of recovery."

In *Caldwell v. Newton,* 99 Kan. 846, 848, 163 Pac. 163, this court quoted from *Massie v. Watts,* 10 U. S. 148, as follows:

" 'Where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as holder of a legal title acquired by any species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstances, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.' (p. 158.)"

A host of authorities might be cited to support this rule.

The propositions discussed dispose of all the questions presented by the defendant, although those questions are presented in a number of different ways under as many different heads.

The judgment is affirmed.

HARVEY, J. (dissenting): While this opinion is well written, I am constrained to withhold my concurrence in it for these reasons: The former action in Lyon county, between Minnie H. Leach and Louis B. Leach, did not dissolve the marriage relation. The parties remained husband and wife. The state has an interest in dower, as it does in homestead; either can be assigned or conveyed, but only in the manner provided by statute. Plaintiffs here were not parties to the antenuptial, or to the postnuptial, nor to the prior action, between Minnie H. Leach and Louis B. Leach. They are entitled to whatever rights naturally follow from those contracts and that decree, but have no standing to maintain an action to enforce an enlargement of them. The rights of the parties here to the Missouri land should be tried in Missouri. This action is an obvious attempt on the part of plaintiffs to evade the Missouri court, evidently fearful of the result there.

---

## APPENDIX.

### FINDINGS OF FACT.

1. Prior to June, 1911, Louis B. Leach was a widower, having his legal residence at Wamego, Pottawatomie county, Kansas. By a marriage with Ella Leamon he had a daughter, Virginia Leach. The wife of the said Louis B. Leach, by whom he had said daughter, had died leaving surviving her said husband and daughter. On June 26, 1911, at Kansas City, Kan., in contemplation of a second marriage with Minnie Humphrey, then and previously a resident of Reading, Lyon county, Kansas, the said Louis B. Leach and the said Minnie Humphrey entered into a contract in consideration of their pro-

posed marriage. This contract was reduced to writing and signed by the said Louis B. Leach and the said Minnie H. Leach in the presence of the probate judge of Wyandotte county, Kansas. By their said marriage contract the parties agreed that each should own, hold and control their separate real and personal property "the same as either should or would if no marriage relation existed between them." But provided that in case of the death of either the homestead occupied as a family residence should pass to the survivor. Each of the parties agreed to sign any deed or other instrument of writing that might be necessary to the sale or conveyance by either of their separate property.

2. Immediately following the execution of the antenuptial agreement, described in finding number one, the said Louis B. Leach and Minnie Humphrey were married. After the marriage the parties took up their residence in Wamego, Pottawatomie county, Kansas, where they continued to live together as husband and wife until sometime in the fall of 1925. No children were born of this marriage. On or about November, 1925, said Louis B. Leach and Minnie Humphrey separated. She returning to her former place of residence in Reading, Lyon county, Kansas, and he remaining at the family home in Wamego.

3. On December 2, 1925, Minnie H. Leach, being the same person as Minnie Humphrey, who married Louis B. Leach in the circumstances above related, brought an action in this court against the said Louis B. Leach and secured personal service of summons upon him. In her petition she alleged, among other things, that her husband, the said Louis B. Leach, owned certain real estate in Jackson and Morgan counties, Missouri, giving a general description of such property. She further alleged acts of cruelty and mistreatment, and prayed for suit money, attorney fees, permanent alimony and an absolute divorce. For the purpose of giving this court jurisdiction of said action, the said Minnie H. Leach alleged her residence in the state of Kansas for more than ten years and her residence in Lyons county, Kansas, at the time of bringing such action in this court. She asked and obtained also a restraining order forbidding the said Louis B. Leach from transferring any of his real or personal property pending the determination of the action. This restraining order was personally served on Louis B. Leach. It was made returnable on December 15, 1925. Pending the hearing upon said matter, the said Minnie H. Leach, through her counsel, Wheeler, Brewster & Hunt, filed her motion reciting that the parties had reached an agreement settling their property rights, and asking that the case be set down for trial. This motion was granted and this action set for hearing on December 15, 1925.

4. Prior to December 15, 1925, the said Minnie H. Leach, plaintiff in the action brought by her in this court on December 2, 1925, and the defendant Louis B. Leach, entered into an agreement by which both parties intended to settle and finally conclude all matters of title, ownership, interest, contingent and inheritable rights of every kind and character in the property owned by each of them and to specifically set apart by legal description the real estate which then and thereafter should belong to each of said parties unencumbered of any claim of any kind or nature whatsoever of the other.

5. The agreement mentioned in finding number four was made whilst the

Fischer v. Leach.

action brought by the said Minnie H. Leach was pending in this court. Prior to the hearing on December 15, 1925, the terms and conditions of the agreement between said Minnie H. Leach and said Louis B. Leach were reduced to writing and signed by the said Louis B. Leach at Topeka, Kan. This written instrument was brought to Emporia, Kan., by counsel for the said Minnie H. Leach, where it was duly signed by her and acknowledged before the clerk of this court. It was introduced in evidence by both of the parties to the present action and appears as exhibit ten (10) of the evidence of the plaintiff. Reference is hereby made to said original contract as a part of this finding.

6. On December 15, 1925, the cause of Minnie H. Leach and Louis B. Leach came on regularly for trial, the plaintiff in that action appeared in person and by her attorney S. M. Brewster, Esq. The defendant, Louis B. Leach, appeared by his attorney, D. R. Hite, and thereupon both of the parties announced themselves ready for trial. Counsel for the plaintiff then announced to the court that the plaintiff's petition would be amended by striking out the prayer for an absolute divorce, so that said petition would ask for permanent alimony only. The court granted the request, and said petition was deemed to have been amended in accordance therewith. Thereupon, in open court, in the presence of the said Minnie H. Leach, her counsel stated that the parties had reached a final agreement settling the rights of each in the property of the other, and presented to the court the final agreement in writing, duly executed by the said Minnie H. Leach and the said Louis B. Leach, and requested the court to enter such judgment in the cause as might be proper and necessary to carry out and effectuate such agreement, if the said agreement should be approved by the court, and submitted said written instrument for the court's consideration. Thereupon, the plaintiff in said action, Minnie H. Leach, was duly sworn, and gave her testimony in support of the allegations of her petition of cruelty and mistreatment by the said Louis B. Leach. In the course of her examination whilst upon the witness stand, the said Minnie H. Leach was asked by her counsel whether she was satisfied with the terms and conditions of the contract made with her husband Louis B. Leach, and referred to in finding number five. In answer to this question the said Minnie H. Leach stated that this contract did not give her a set of bedroom furniture and a victrola to which she was entitled. Thereupon, it was agreed, in open court, that the said Minnie H. Leach should have the bedroom set and victrola to which she referred. Thereupon the said Minnie H. Leach, whilst upon the witness stand, and in open court, stated that she was satisfied.

7. On December 15, 1925, responsive to the statements made to the court during the trial of the said action of *Minnie H. Leach v. Louis B. Leach,* and after hearing the evidence and examining said contract, referred to in finding number five, this court made and entered its final decree, a journal entry of which having been reduced to writing by the parties through their counsel, was then approved in writing by counsel for each of the parties, and thereupon duly signed by the judge of this court and filed as a part of the record of the said action of *Minnie H. Leach v. Louis B. Leach.* Reference is made to said journal entry, introduced in evidence, as a part of this finding.

8. That whilst said journal entry was in course of preparation counsel for

the said Louis B. Leach requested that a provision be inserted therein expressly barring the said Minnie H. Leach of any right or estate of dower in the property of Louis B. Leach. This request was granted by counsel for Mrs. Minnie H. Leach, and a provision, shown in said final decree barring said Minnie H. Leach of any interest or estate of dower, was inserted in the draft of said journal entry, which thereupon was approved in writing by Wheeler, Brewster & Hunt, through Mr. S. M. Brewster, as attorneys for the said Minnie H. Leach, and by H. D. Hite, as attorney for the said Louis B. Leach, and before said journal entry was signed by the judge of this court.

9. Louis B. Leach, the defendant in the action brought by Minnie H. Leach against him in this court, on December 2, 1925, and referred to in these findings of fact, died intestate a resident of Wamego, Pottawatomie county, Kansas, on June 5, 1926. He left surviving him two grandchildren: Roderic Leach Fischer and Eleanor Ann Fischer, who are the minors in whose behalf the said Floyd E. Fischer brings this action. These grandchildren were born of a marriage between Virginia Leach, the only daughter of Louis B. Leach by his first marriage, and Floyd E. Fischer. The said daughter, Virginia Leach, died in March, 1923, leaving as her only heirs at law her said husband and her two said children, grandchildren of the said Louis B. Leach. Prior to his death the said Louis B. Leach executed and delivered deeds containing covenants of warranty to his said grandchildren, thereby conveying to them the real estate described in plaintiff's petition herein, which real estate is the same property described in the final decree of this court, as a part of the property set apart by said decree as the separate property of the said Louis B. Leach, free of any claims of any kind or character of the said Minnie H. Leach. Said deeds were duly recorded in the offices of the recorder of deeds in Jackson and Morgan counties, Missouri. Both of said deeds were executed and delivered subsequent to the final decree of this court entered in the case of *Minnie H. Leach v. Louis B. Leach.*

10. The day following the death of the said Louis B. Leach, or soon thereafter, the said Minnie H. Leach went from her home in Reading, Kan., to Wamego, Kan., and entered and took possession of the family home in Wamego, occupied by the said Louis B. Leach in his lifetime, and on or about June 25, 1926, asserted in the probate court of Pottawatomie county, Kansas, in person and by attorneys, that she was entitled to said home; that she was an heir at law of the said Louis B. Leach, and as such entitled to a distributive share of his estate. These assertions of an interest in the property set apart by said final decree of December 15, 1925, to the said Louis B. Leach, were made in writing to the probate court of Pottawatomie county, Kansas, in an application for letters of administration and a motion asking to be declared an heir at law of the said Louis B. Leach. Upon a hearing in said probate court, at which the said Minnie H. Leach and her counsel were present, it was found and adjudged that she was not an heir of the said Louis B. Leach, but was barred from any rights in his property, and was an unsuitable person to administer his estate.

11. That early in July, 1926, shortly before this action was commenced, the

said Minnie H. Leach employed I. N. Watson, Esq., an attorney at law residing in Kansas City, Mo., and practicing in the courts of that state, to bring such legal proceedings in the courts of Missouri as in his opinion were proper or necessary to assert a claim that the said Minnie H. Leach as the surviving wife of the said Louis B. Leach, was entitled to a dower interest, or estate, in his real estate situated in Missouri, and particularly described in the petition herein and in the final decrees of this court of December 15, 1925, entered in the case of *Minnie H. Leach v. Louis B. Leach,* and to assert, in the courts of that state, a right to a child's share in the property of the said Louis B. Leach, situated in the state of Missouri.

12. This action was begun in this court on July 10, 1926, by filing the petition and causing a summons to issue for the said Minnie H. Leach. This summons was personally served upon Minnie H. Leach in Lyon county, Kansas. At the time the action was commenced, this court issued a restraining order pending the plaintiff's application for a temporary injunction, which was set down for hearing on July 22, 1926, in this court. On that day the defendant, Minnie H. Leach, did not appear in person, but did appear by her counsel, Harris & Samuels, and the said I. N. Watson. The plaintiff caused a subpoena to issue for the said Minnie H. Leach, who appeared in person on the morning of July 23, 1926, to which time the hearing upon said application was adjourned. On July 23, 1926, by its interlocutory order, this court directed the said Minnie H. Leach to execute and deliver to the said minors certain deeds of release conveying to them any right of dower or other right she might claim in said Missouri real estate, and an assignment to the administrator of the estate of Louis B. Leach of any interest she had or claimed to have in any of the personal property of the said Louis B. Leach set apart to him under the final decree of this court of December 15, 1925. Pursuant to his order, the said deeds and assignment were executed by said Minnie H. Leach, and by order of this court directed to be deposited with its clerk to await the further orders of the court upon the final disposition of this cause. Said deed and assignment were signed and acknowledged by the said Minnie H. Leach under protest, she claiming and contending that said minors were not entitled to said property covered thereby unincumbered of her claim of dower therein.

13. Minnie H. Leach, the defendant herein, and plaintiff in the action brought by her against Louis B. Leach to which reference has been made, was paid $27,500 in cash by Louis B. Leach on January 9, 1926, pursuant to the judgment of this court of December 15, 1925, entered in the cause of *Minnie H. Leach v. Louis B. Leach,* which sum she has retained and has never offered to return. The said judgment and the contract referred to in finding number five were duly executed on his part by the said Louis B. Leach prior to his death, and the said Minnie H. Leach has received and is in the enjoyment of the said $27,500, and has been and is in the enjoyment of the real estate set apart to her in and by said final decree of December 15, 1925.

14. Upon the pleadings, evidence and admissions of counsel, introduced and made in open court in this action, and upon the record, proceedings and conduct of the parties in the case of *Minnie H. Leach v. Louis B. Leach,* as

shown by the evidence, admissions and proceedings in this action, the court finds as a fact that the defendant herein, Minnie H. Leach, plaintiff in the action brought by her against her husband, Louis B. Leach, in this court, intended to and did, for valuable consideration which she duly received and still retains, voluntarily release any inchoate right of dower, and all rights, title or interest conferred upon her by the laws of the state of Missouri, as the wife of the said Louis B. Leach, in respect of real and personal property acquired and owned by her husband, Louis B. Leach, and particularly described as his property in said final decree of this court, entered on December 15, 1925, and situated in or under the jurisdiction of the state of Missouri. The court further finds that the attempts, threats and intent of the said Minnie H. Leach, as shown by her pleading in this action and by her conduct and the evidence herein, are, and since her husband's death have been, to resort to the courts of Missouri for the express purpose of avoiding said voluntary release of such rights of dower and other rights respecting said property in said state of Missouri; that said attempts and threats were made and are now made in bad faith, and with a design to perpetrate a fraud upon the said minor grandchildren of the said Louis B. Leach, as his grantees and heirs at law, and to perpetrate a fraud upon and evade the effect of the decision and and judgment of this court, entered at her request and approved in writing by her duly authorized attorneys of record in the said action brought by her in this court against her husband, Louis B. Leach; and that the defendant is not in good faith in the employment of counsel to bring actions in foreign states to accomplish or attempt to accomplish such design.

15. Both the said Minnie H. Leach and the said Louis B. Leach were residents of Kansas at, before and after the beginning of the action by her against him. This court in said action has jurisdiction of the persons of the parties thereto, and its judgment, finally settling and determining their respective rights in the real and personal property then owned by them and each of them, was made and entered at their express request through their respective counsel, to carry out and effectuate their voluntary agreement.

16. This court has jurisdiction of the persons of the parties to this action, and finds as a fact that the plaintiff, as guardian of the said minor heirs, brings this action in their behalf to enforce the judgment of this court of December 15, 1925, referred to in the foregoing finding.

17. The court finds generally that the allegations of plaintiff's petition are true.

### CONCLUSIONS OF LAW.

1. The defendant is estopped by her contract described herein, and by the final judgment of this court in the case of *Minnie H. Leach v. Louis B. Leach* from asserting any dower, or other rights, in the property described in plaintiff's petition situated in the state of Missouri.

2. The defendant should be permanently enjoined from asserting in the courts of Missouri, or in any of the tribunals of that state, or in any other place, any right of dower, or any other right or interest, in or to, about or concerning, the real estate described in plaintiff's petition herein, and from

interfering in any manner whatever with the title, ownership, possession and enjoyment of such property by the plaintiff as guardian of said minors. Such permanent injunction should apply to and include any and all attorneys, agents and servants of the defendant, and should restrain her from setting up any right of dower, or any other interest of any kind or character whatsoever, in, to, about and concerning any personal property within the jurisdiction, or claimed to be within the jurisdiction, of the state of Missouri which was owned by Louis B. Leach at the time of his death, and which had been set apart to him by the decree of this court December 15, 1925, more particularly described in the findings of fact herein.

3. The plaintiff, as guardian of said minors, is entitled to have delivered to him by the clerk of this court, the instruments of conveyance of dower interest and of assignment made and acknowledged by the defendant pursuant to the interlocutory order of this court made and entered on July 23, 1926; and an injunction should issue permanently restraining the defendant with interfering with the recordation of said instrument in the proper public offices in the state of Missouri, and from attempting, directly or indirectly, to bring any action in any court or tribunal in the state of Missouri or elsewhere, setting up or claiming any right, title or interest, dower or otherwise, in, to, about and concerning any of the property described in said deeds, or described in said assignment. This injunction should apply to and include the attorneys, agents and servants of the defendant, and all persons acting for her or in her behalf, and extend to and include her heirs, personal representatives and assigns.

4. The costs of this action to be taxed should be paid by the defendant.

### ANTENUPTIAL CONTRACT.

This antenuptial contract made and entered into at Kansas City, Kan., by and between Louis B. Leach, of Wamego, Pottawatomie county, and state of Kansas, a widower, party of the first part, and Minnie Humphreys, of Reading, Lyon county, and state of Kansas, a widow, party of the second part. Witnesseth:

That the party of the first part and the party of the second part contemplate legal marriage, under the laws of the state of Kansas, and it is agreed: That all the properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to the party of the first part before marriage, shall be and remain forever his personal estate, and that this shall include all interest, rents and profits which may in time accrue or result in any manner from increase in value, or be collected for the use of the same in any way.

And it is further agreed, that all properties of any name or nature, real, personal or mixed, wherever the same may be found, which belong to the party of the second part before marriage, shall be and remain forever her personal estate, and that this shall include all interest, rents and profits which may in time accrue or result in any manner from increase in value, or be collected for the use of the same in any way.

And it is agreed between the party of the first part and the party of the second part to this agreement, that each will sign with the other all title papers, deeds or other papers necessary to transfer property when sold to a purchaser, as such title papers are usually executed by a man and wife in the state of Kansas, and that this curtesy shall be prompt at any time and in any place.

And it is further agreed by the party of the first part, that he does and will from his own personal estate assume the necessary expense of the support and maintenance of the party of the second part.

And it is further agreed, that nothing herein shall be construed to be a bar to either party to this agreement giving any property of which they may be possessed to the other party by will or otherwise. It being understood that each party to this agreement shall control their personal estate, as described herein, and do with the properties thereof whatsoever they wish and will, by his or her orders or directions, or by testament, the same as either could or would do if no marriage relation existed between them.

This agreement made and signed in duplicate in and for the purpose set forth this 26th day of June, nineteen hundred and eleven. Understanding written on the back hereof· a homestead declaration in eight (8) lines.

Louis B. Leach.<br>Minnie Humphreys.

The foregoing instrument signed in my presence this 26th day of June, 1911.
(Seal.)                              ·John T. Sims, *Probate Judge.*

(Written on the back of said contract.)

It is understood that the L. B. Leach family home in Wamego, Kan., or any other premises anywhere occupied and lived in as a family residence by the parties of this agreement as man and wife, shall be called the homestead, and in the event of the death of either party the surviving party shall have and hold the premises and their homestead.

Separation Agreement.

This agreement, made this 14th day of December, 1925, by and between Louis B. Leach, of Wamego, Kan., party of the first part, and Minnie H. Leach, party of the second part, Witnesseth:

Whereas, the parties hereunto are husband and wife, but no issue has been born of their said marriage; and,

Whereas, the parties hereunto did, prior to their said marriage, enter into the contract, a true copy of which is hereto attached, marked Exhibit A [the antenuptial contract], and made a part hereof; and,

Whereas, the parties hereto are satisfied that they can no longer live together as husband and wife, and have agreed that in the future it will be for the best interests of both that they live separate and apart from each other, and that each have and hold his or her separate property free and clear of all claims and demands of the other party hereto;

Now therefore, the parties hereto, each in consideration of the covenants and agreements of the other party hereto, have agreed and hereby do agree as follows, to wit:

Fischer v. Leach.

1. The parties hereto have already divided their personal property, and each is now in possession of the personal property which he or she owns, and title of each to such personal property now in the possession of each is hereby confirmed and shall be held by each free and clear of the demands of the other party hereto.

2. The said Louis B. Leach shall pay to the said Minnie H. Leach on or before the tenth day of January, 1926, the sum of twenty-seven thousand five hundred ($27,500) dollars, either in cash or in securities acceptable to the said Minnie H. Leach, at her option, which sum of twenty-seven thousand five hundred ($27,500) dollars shall be and become separate property of the said Minnie H. Leach, free and clear of all demands of the said Louis B. Leach.

3. In consideration of the said payment to the said Minnie H. Leach, she waives all claims and demands of every kind and description which she may have under the contract, a copy of which is hereto attached, as exhibit A, and all claims of every kind, present and/or future, upon the said Louis B. Leach either for maintenance or alimony, and/or on any other account.

4. At the time of the marriage of the parties hereto the said Minnie H. Leach was, and she now is, the owner of the following-described real property, to wit: [Here follows description of real estate in Lyon county, Kansas.]

5. The title of the said Minnie H. Leach in and to the said property is hereby confirmed, and the said Louis B. Leach shall not inherit from her any of said property or any real or personal property which she may hereafter acquire. And, in the event that she shall die without executing a will, said property shall pass to and vest in the heirs of the said Minnie H. Leach, other than the said Louis B. Leach; and the said Minnie H. Leach shall have full power to dispose of said property and of any other property which she may hereafter acquire, by will in any manner she shall deem best; and the said Louis B. Leach hereby consents to the making of any will which she shall desire to make, and this instrument shall be held and construed to be such consent, and all property covered by such will or wills shall pass to the devisees and legatees therein named, without any claim of title or interest therein by the said Louis B. Leach. And, to facilitate the transfer of said real estate or any other real estate which the said Minnie B. Leach hereafter may acquire, the said Louis B. Leach does hereby constitute and appoint the said Minnie H. Leach his attorney in fact to sign his name to any and all deeds of conveyance of said property, or of any property hereafter acquired by her, and to convey any interest therein which under the law as her husband he may now have or may hereafter acquire. But this power shall not be construed as authorizing the said Minnie H. Leach to sign the name of the said Louis B. Leach to any deed or deeds conveying property which is hereby set apart to him or which he hereafter may acquire; and such deed or deeds, so signed by her in his name as above set forth shall convey all of the interest which the said Louis B. Leach may have in any such property as the husband of the said Minnie H. Leach.

6. All real property now owned by the said Louis B. Leach and/or which hereafter he may acquire, together with all real property, if any, now standing jointly in the name of the parties hereto, including the several tracts and parcels of real estate hereinafter particularly described in a statement con-

tained in this clause, shall be and remain the property of the said Louis B. Leach, and his title to and ownership thereof is hereby confirmed, and the said Minnie H. Leach shall not inherit from him any of said property or any real or personal property which hereafter he may acquire. And in the event that he shall die without executing a will, said property shall pass to and vest in the heirs of the said Louis B. Leach, other than the said Minnie H. Leach; and the said Louis B. Leach shall have full power to dispose of said property, and of any other property which hereafter he may acquire, by will in any manner he shall deem best; and the said Minnie H. Leach hereby consents to the making of any will which he shall desire to make, and this instrument shall be held and construed to be such consent, and all property covered by such will or wills shall pass to the devisees and legatees therein named without any claim of title or interest therein by the said Minnie H. Leach. And to facilitate the transfer of the said real estate or any other real estate which the said Louis B. Leach hereafter may acquire, the said Minnie H. Leach hereby does constitute and appoint the said Louis B. Leach her attorney in fact to sign her name to any [or] all deeds of conveyance of said property, or/and any property hereafter acquired by him, and to convey any interest therein which under the law as his wife she may now have or hereafter may acquire. But this shall not be construed as authorizing him to sign her name to any deed or deeds conveying property which is hereby set apart to her or which hereafter she may acquire; and such deed or deeds so signed by him in her name as above set forth shall convey all of the interest which the said Minnie H. Leach shall have in any such property as the wife of the said Louis B. Leach. The following is a description of the real estate above mentioned in this clause: [Here follows description of real estate, including lots 408, 409, 410, in Wamego, together with other lots in that city; and also, the Missouri real estate described in appellee's petition, and as described in the findings and judgment of December 15, 1925.]

7. The parties hereto shall live separate and apart from each other, each free from interference by the other, and each shall own, hold and control his or her property as herein provided free and clear of all interference or claims by the other party hereto.

8. The intent and purpose of this instrument is to enable the parties hereto to live separate and apart from each other; to permit the accumulation of property by the other free and clear from demands upon it by the other, and to bar each from any interest, inheritable or otherwise, in any property owned by them or either of them and/or hereafter acquired by them or either of them.

In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.                 Louis B. Leach.
                                                            Minnie H. Leach.

JOURNAL ENTRY OF JUDGMENT IN ACTION FOR ALIMONY.

Now on this 15th day of December, 1925, at the regular October, 1925, term of said court, came on for trial the above-entitled cause, the plaintiff, Minnie H. Leach, appearing in person and by her attorneys, Wheeler, Brewster & Hunt, and the defendant, Louis B. Leach, by his attorneys, D. R. Hite and M. B. Friedberg; and

· Thereupon, both sides announced ready for trial, and the plaintiff asked and obtained leave of court to amend her petition by asking for permanent alimony only, the defendant consenting thereto; and

Thereupon, the plaintiff stated her cause to the court, and the defendant stated his cause to the court; and

Thereupon the plaintiff introduced her evidence and rested; and, there being no further evidence, the court doth find that the defendant has been guilty of extreme cruelty and gross neglect of duty toward the plaintiff, as stated in said petition, and the plaintiff is entitled to have and recover from the defendant permanent alimony, and that the plaintiff and the defendant are entitled to and should in this action have their property rights settled and adjusted.

The court further finds that prior to the marriage of said plaintiff and defendant, and on the 26th day of June, 1911, the plaintiff and defendant entered into a certain antenuptial contract, a copy of which is attached to the memoranda of agreement hereinafter referred to.

The court further finds that the plaintiff and defendant are husband and wife, and further finds that no children have been born to such marriage; and the court further finds that on the 14th day of December, 1925, the said plaintiff and defendant entered into a certain memoranda of agreement whereby they undertook to and did settle the property rights of said plaintiff and defendant in their property and the property of each other, which said memoranda of agreement is filed in said case and has been examined and approved by the court in all its parts.

The court further finds that the plaintiff is the owner of the following-described real estate: [Here follows description of defendant's property in Lyon county, Kansas.]

The court further finds that the defendant is the owner of the following-described real estate: [Here follows description of plaintiff's real property in Wamego, Pottawatomie county, Kansas; in Gray county, Kansas; in Scott county, Arkansas; in Morgan county, Missouri; and in Kansas City, Mo.]

It is therefore ordered, considered and adjudged by the court that all personal property now in the possession of the plaintiff and/or which hereafter she may acquire be and the same is declared and adjudged by the court to be her own and separate property, and is to be held by said plaintiff free and clear of any demands or rights of defendant herein;

It is further ordered, considered and adjudged by the court that all personal property now in the possession of the defendant and/or which he hereafter may acquire be and the same is adjudged to be his own and separate property, and the plaintiff is adjudged to have no right or interest therein.

It is further considered, ordered and adjudged by the court that the said plaintiff, Minnie H. Leach, have and recover as permanent alimony from the said defendant, Louis B. Leach, the sum of twenty-seven thousand five hundred dollars ($27,500), which said sum shall be and is hereby decreed to be in full of all permanent alimony, and it is further ordered that said amount

shall be paid to the said plaintiff by the defendant on or before January 10, 1926, and to be paid according to the stipulations and agreement hereinbefore referred to.

It is further ordered, considered and adjudged by the court that upon the payment to the said Minnie H. Leach of said sum of twenty-seven thousand five hundred dollars ($27,500) that she be barred from any right or claim or demand which she might have against the defendant under and by virtue of said antenuptial contract, hereinbefore referred to, and barred from any right against the said Louis B. Leach for maintenance or permanent alimony.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

And the plaintiff is forever barred from setting up any right, title or estate whatsoever in and to said real estate and personal property, whether now owned by the defendant and/or hereafter acquired by him, and from all rights of inheritance and/or dower therein. But this shall in no way affect the lien of said judgment for $27,500 on the real estate of said defendant, or the right of said plaintiff to enforce said judgment by execution or otherwise. And the defendant is forever barred from setting up any right, title, interest or estate whatsoever in and to said real estate and personal property, whether now owned by plaintiff and/or hereinafter acquired by her, and from any right of inheritance or otherwise therein.

· It is further ordered by the court that the plaintiff pay the costs of this action.

It is further ordered by the court that said memoranda of agreement, herein approved by the court, be filed in said cause with the clerk of said court.

It is further ordered by the court that the restraining order ·heretofore entered in this cause be, and the same is hereby dissolved.