No. 28,749.

ROBE E. McVICAR, *Appellee*, v. HATTIE L. McVICAR, *Appellant;* MARY JANE FRASER et al., Minors, *Appellees.*

(278 Pac. 36.)

Opinion filed June 8, 1929.

*C. A. Leinbach,* of Onaga, *E. C. Brookens, E. S. Francis, H. L. Hart,* all of Westmoreland, *T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, for the appellant.

*A. E. Crane, B. F. Messick* and *A. Harry Crane,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to quiet title to certain lands in Pottawatomie county which belonged to the late George A. McVicar in his lifetime. The contest is between Hattie L. McVicar, widow and second wife of George, on one side, and the only son of George and two grandchildren, children of George's deceased daughter, on the other. The son and grandchildren claim to inherit the land and that the widow, Hattie, barred herself of all interest by an antenuptial contract.

The pertinent facts were these: George A. McVicar was a long-time resident of Pottawatomie county. About 1915 he and his first wife, Lilly McVicar, removed to California. By that wife he had a son, Robe E. McVicar, the plaintiff. He also had a daughter who married one Daniel Fraser and died in 1923, leaving two minor children, Ward Fraser and Mary Jane Fraser, who are named as defendants in this action. The first Mrs. McVicar died in California, and some time later, in 1924, George A. McVicar returned to Kansas and contracted a marriage with Hattie L. Booth, defendant in this action. She was the widow of one George W. Booth, a substantial citizen of Onaga who had died some years previously without issue, and who left a considerable estate to her upon her promise that at her death she would dispose of what she should leave in a certain way suggested by him. Partly on account of that promise to her first husband and in consideration of the pending matrimonial engagement, Hattie and her affianced husband, George, entered into a written antenuptial contract defining their individual rights in their separate properties and renouncing certain marital rights in and to each other's property. The correct interpretation of this contract is the important matter to be determined in this lawsuit. The contract was drawn by one J. W. Dunn, an Onaga banker, who made several drafts before he succeeded in phrasing it to suit the parties; but eventually one draft of it was signed by Hattie L. Booth and George A. McVicar and witnessed by one Lillian J. Hunt. The original contract was not produced. A

copy whose disputed authenticity was established at the trial will have to be set down here:

"This agreement made this 21st day of October, A. D. 1924, between Hattie L. Booth, of Onaga, Kan., party of the first part, and George A. McVicar, of ———, party of the second part, witnesseth:

"That whereas, a marriage is about to be solemnized between the said parties; and whereas, the said Hattie L. Booth is the owner and possessed of certain real estate, notes, mortgages, stocks, securities and other personal property; and whereas, the said George A. McVicar is the owner and possessed of certain other real estate and other personal property; and whereas, it is mutually desired and agreed by the said parties that the estate of each of said parties shall remain separate, and be subject to the sole control and use of its owner as well after as previous to the solemnization of said marriage.

"It is hereby mutually covenanted and agreed:

"First. That the estate of the said Hattie L. Booth shall remain and be her separate property, subject entirely to her individual control and use the same as if she were unmarried; and that the said George A. McVicar shall not acquire by force of said contemplated marriage, for himself, his heirs, assigns, or creditors, any interest in her said property or estate, or right to the control thereof, or any interest in the income, increase, rents, profits, or dividends, arising therefrom; and it is further agreed by the said George A. McVicar that any property that the said Hattie L. Booth may hereafter acquire or become entitled to shall be owned and held by her as though she had acquired it before the solemnization of said marriage; and the said George A. McVicar hereby agrees, in consideration of the said contemplated marriage and of the covenants of the said Hattie L. Booth herein set forth, that he will waive, release and relinquish unto the said Hattie L. Booth all right to the use and control of her separate property and estate, and the income therefrom; and further agrees that the said Hattie L. Booth shall have the right at all times to dispose of any part or all of her separate property and estate by deed, will or otherwise, upon her sole signature, hereby ratifying and consenting on his part to any and all such disposition of her said property or estate.

"Second. That the estate of the said George A. McVicar shall remain and be his separate property, subject entirely to his individual control and use the same as if he were unmarried; and the said Hattie L. Booth shall not acquire by force of the said contemplated marriage, for herself, her heirs, assigns or creditors, any interest in his said property or estate, or right to the control thereof, or any interest in the income, increase, rents, profits or dividends arising therefrom; and it is further agreed by the said Hattie L. Booth that any property that the said George A. McVicar may hereafter acquire or become entitled to shall be owned and held by him as though he had acquired it before the solemnization of the said marriage; and the said Hattie L. Booth hereby agrees, in consideration of the said contemplated marriage and of the covenants of the said George A. McVicar herein set forth, that she will waive, release and relinquish unto said George A. McVicar all right to the use and control of his separate property and estate, and the income therefrom; and further agrees that the said George A. McVicar shall have the right at all times to dispose of any part or all of his separate property or estate by deed,

will or otherwise, upon his sole signature, hereby ratifying and consenting on her part to any and all such disposition of his said separate property or estate.

"Third. This contract is to be binding on the heirs, assigns and legal representatives of both parties hereto.

"Witness our hand in duplicate on the day and date first above written."

Following the execution of this or some such contract George and Hattie were married and went to California. George died in 1927 while on a visit to Onaga, and this action was brought to determine whether Hattie has any claim on the Kansas lands of George. Issues were joined and the cause was tried by the court with the aid of an advisory jury, which answered two special questions:

"1. Did George A. McVicar and Hattie L. McVicar enter into an antenuptial agreement? A. Yes.

"2. If you answer question 1 in the affirmative, which is that agreement, the one claimed by plaintiff or the one offered in evidence by the defendant Mrs. McVicar? A. One claimed by plaintiff."

The trial court adopted these special findings and made additional general findings and gave judgment for the son and the minor grandchildren and against the claim of Hattie to a widow's share of the Kansas land.

In this appeal defendant argues three propositions: (1) That the evidence was insufficient to prove that the antenuptial contract executed by the parties was identical in terms with the one accredited by the jury and trial court; (2) that by the terms of that contract, if genuine, defendant had not barred herself of her right of inheritance; and (3) that defendant should have been granted a new trial.

Touching these in order, the fact that George A. McVicar and Hattie L. Booth had made some such contract as that set out above was not in dispute. The one which was executed could not be found. Naturally Mrs. McVicar, nee Booth, would have a copy and Mr. McVicar would have a copy—perhaps each had a duplicate—and naturally the son and the grandchildren would not have access to the originally signed instrument, whether there was but one such document or whether there were duplicates. And so the plaintiff made proper demands upon defendant and her counsel to produce the antenuptial contract and for an inspection of it. Plaintiff was not quite fairly treated in response to this demand. Defendant's agent, J. W. Dunn, promised plaintiff's counsel that he would get him a copy of the antenuptial contract. He failed to do so, but later told plaintiff's counsel a copy of it could be obtained if

he would meet Dunn in California. Plaintiff's counsel went there and met Dunn and defendant, but no copy was forthcoming. Dunn then told plaintiff's counsel that he had a carbon copy of the contract in his bank in Onaga, Kan., and that plaintiff could get a copy of it from Mrs. McVicar's attorney, C. A. Leinbach. Plaintiff's attorney then returned to Kansas and made formal demand on Leinbach. The latter ignored the demand, but did eventually furnish the copy which was established as genuine at the trial. Armed with this copy, plaintiff's attorney returned to California and took the depositions of Mrs. McVicar, of Lillian J. Hunt, who had witnessed the original contract, and of .Q. A. Knouse, a former Kansan and long-time acquaintance of McVicar, who had seen the original contract. The gist of these depositions tended to establish the authenticity of the copy furnished by Leinbach. Moreover, another copy of one of the drafts of the antenuptial contract prepared by Dunn and tentatively put forward by defendant as the genuine did not differ materially from the one accredited by the court. The difference in the two was merely in the use of the word "estate" instead of the word "property," thus:

"DEFENDANT'S EXHIBIT A.

"It is hereby mutually covenanted and agreed:

"First. That the *property* of the said Hattie L. Booth shall remain and be her separate property. . . .

"Second. That the *property* of the said George A. McVicar shall remain and be his separate property. . . ."

In the copy adopted by the trial court and jury as genuine the corresponding language read:

"It is hereby mutually covenanted and agreed:

"First. That the *estate* of the said Hattie L. Booth shall remain and be her separate property. . . .

"Second. That the *estate* of the said George A. McVicar shall remain and be his separate property. . . ."

It is plain that in the substitution of the word "estate" in the later draft for the word "property" in the earlier draft the draftsman's only concern was to avoid repetition of the word "property," and that the contracting parties had no technical purpose to serve in the use of the word "estate." As used in these excerpts quoted above the words "property" and "estate" were synonymous. Both words meant the entire worldly wealth in land, gear and goods owned by the contracting parties, and not merely what they had

which would descend to their heirs or devolve on an administrator when they died. We hold that the contract as found by the court was sufficiently established by evidence, and that the difference between the two drafts was not of sufficient consequence to make any difference in the rights of the parties, whichever of them was found to be authentic.

Coming, then, to the main question, did the antenuptial contract bar the defendant from her statutory right to inherit an undivided half interest in the lands of George A. McVicar?

It is not in dispute that a surviving spouse may bar or limit her statutory right of inheritance by an antenuptial contract. Contracts to that effect have frequently been upheld by this court. (*Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537; *Matney v. Linn*, 59 Kan. 613, 54 Pac. 668; *Henry v. Butler*, 87 Kan. 122, 123 Pac. 742; *Gordon v. Munn*, 87 Kan. 624, syl. ¶¶ 4, 5, 125 Pac. 1; *Eberhart v. Rath*, 89 Kan. 329, 131 Pac. 604; *Watson v. Watson*, 104 Kan. 578, 180 Pac. 242; 182 Pac. 643; id. 106 Kan. 693, 189 Pac. 949; *Burns v. Spiker*, 109 Kan. 22, 202 Pac. 370; *Getter v. Getter*, 118 Kan. 150, 233 Pac. 1016; *Fischer v. Leach*, 124 Kan. 97, 258 Pac. 295.) To be valid, of course, such contracts must have been understandingly and fairly made, and no strained interpretation of language will be permitted to strip a surviving spouse of his or her inheritable interest in the property of the other spouse who has died. It is on this latter principle of law which defendant chiefly relies to overthrow the construction given to the contract at bar by the trial court, and the cases of *Kistler v. Ernst*, 60 Kan. 243, 56 Pac. 18, and *Rouse v. Rouse*, 76 Kan. 311, 91 Pac. 45, are cited as controlling here. A copy of the contract in the Kistler case is set out in the opinion, and the court failed to find in its terms any language which purported to renounce the surviving spouse's right of inheritance. To the same effect was *Rouse v. Rouse*, supra, in which, however, this court said:

"We have frequently held that agreements of this character should be liberally construed to carry into effect the intention and purpose of the parties; nevertheless, their terms are not to be extended by mere implication to exclude the right of the survivor to take by inheritance. . . .

"While we are not prepared to say that an express provision must always appear in order to deprive the survivor of the rights of inheritance, there are authorities which go to that extent." (pp. 317, 318.)

In the case at bar, however, the parties agreed that their respec-

tive properties should remain and be their several respective properties the same as if each of them were unmarried, and further—

"The said Hattie L. Booth shall not acquire by force of said contemplated marriage, for herself, her heirs, . . . any interest in his [George A. McVicar's] property or estate. . . ."

McVicar's renunciation of interest in his affianced wife's property was reciprocally sweeping in its terms, and this court finds it impossible to qualify or limit the fair meaning of this language. It simply means what it says. Neither George nor Hattie, nor their heirs, were to acquire any actual, potential, or inchoate rights in each other's property as a consequence of their contemplated marriage; and the trial court did not err in its judgment to that effect.

Defendant's motion for a new trial was chiefly predicated on the following incident. In defendant's deposition, she had testified:

"Q. I will ask you if after reading exhibit A it, in your judgment, contains the substance of the agreement entered in between you? A. Yes, sir. It was made in duplicate. My first husband's name was George W. Booth.

"Q. You made a will, did you, after the execution of the contract? A. Yes, sir.

"Q. Can you tell me where your copy of the agreement is? A. I destroyed it.

"Q. When? A. After Mr. McVicar's death."

It may be that some disparaging reference to the destruction of defendant's copy of the agreement was made at the trial, and counsel for defendant sought to correct any hurtful impression which such testimony may have created by procuring an affidavit from defendant in which she averred that in her first deposition she meant that she had destroyed her will after Mr. McVicar's death, and that she did not mean to say she had destroyed the antenuptial contract or her copy of it. This affidavit was adduced in support of the motion for a new trial. If the judgment of the court had been arrived at by a determination of sharply controverted facts, wherein an inference detrimental to defendant might be drawn by her seeming admission that she had willfully destroyed an important evidentiary document, this affidavit explaining that seeming admission would have required the serious concern of the trial court. But, as we have seen, this case does not greatly depend upon controverted evidence or disputed facts, but largely and almost entirely upon the proper interpretation of the antenuptial agreement which the parties did make, and upon the undisputed circumstances which prompted the parties to

make it. Therefore the court's ruling on the motion for a new trial was not erroneous, nor would a new trial have served any advantageous purpose in defendant's behalf.

There is no error in the record, and the judgment is affirmed.