No. 29,762.

In re Estate of GEORGE OTTO BEMARKT; WALTER C. BEMARKT, ALVIN E. BEMARKT, STELLA B. GADELL and MARTHA B. BRODERICK, *Appellants*, v. C. N. PROUTY and ANNA BEMARKT, *Appellees.*

(294 Pac. 890.)

Opinion filed January 10, 1931.

*Donald H. Corson*, of Kansas City, *William H. Allen*, of St. Louis, Mo., and *C. E. Lombardi*, of Kansas City, Mo., for the appellants.

*J. E. McFadden, O. Q. Claflin, Jr.*, and *James L. Hogin*, all of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: George O. Bemarkt died on November 13, 1928, and left surviving him his wife, Anna Bemarkt. At the time of his

death he owned both real and personal property in which his widow claimed inheritable rights. Nephews and nieces of the deceased brought this action asking a determination of the question that the widow had no right of inheritance in the estate of her husband by reason of the antenuptial agreement entered into January 3, 1905, the day before their marriage. On an agreed statement of facts the case was tried and resulted in a decision that the antenuptial agreement did not bar Anna Bemarkt from her statutory right to the property left by her deceased husband. The plaintiffs appeal, and the only question presented is the interpretation and effect of the antenuptial agreement. The pertinent parts of that agreement are:

"Witnesseth: That the parties hereto, in view of a contemplated marriage between said parties, do hereby agree to and with each other that the parties hereto agree and covenant that the party of the second part shall hold and control in her right all the real and personal property, of what kind so ever, she now owns, holds, controls, and possesses, the same to all intents and purposes as if she were sole and unmarried.

"It is further agreed between said parties hereto that the party of the first part shall hold and control in his own right all the real and personal property, of what kind so ever, he now holds, owns, controls and possesses, the same to all intents and purposes as if he were sole and unmarried;

"It being the intention and purpose on the part of each, and the parties hereto agree and covenant, that the other might dispose of his or her property by deed or devise without the consent of the other to all intents and purposes as if no such relation as that of marriage between them existed."

Under the agreed facts it appears that George O. Bemarkt and Anna Knackstedt were legally married on January 4, 1905, and lived together as husband and wife until November 13, 1928, when he died intestate. He left no lineal descendants or ancestors. The plaintiffs are the children of a brother of George O. Bemarkt and that brother died prior to the death of George. When the agreement was made George O. Bemarkt was about fifty-nine years of age, and Anna Knackstedt was about fifty-four years old. Each of them owned a substantial property at that time. Anna had two children living at the time, and George O. Bemarkt had nephews and nieces living when the agreement was made. That agreement provides, as we have seen, first, that each of the contracting parties shall hold and control in his own or her own right, the property each now owns and possesses, the same as if he or she were sole and unmarried. The expressed intention of the agreement was that each might dispose of his or her property by deed or devise during their lifetime the same

as if the marriage relationship did not exist. It is seen that no reference to heirship or inheritance rights was mentioned in the agreement, nor was anything said as to the disposition of property of either after his or her death. Specific provision was made for the control of the property with the right to convey or devise the same without the consent of the other. Can the terms of the instrument be so expanded as to cover the important provision of the right of inheritance? May the court infer from the language used that the parties intended to set aside the law of descents and distribution when the death of either occurred? The expressed intention of the parties is the controlling consideration in the interpretation of such an agreement, and the rule is that either of the parties cannot be barred from inheritance by a mere implication or a strained construction which may be derived from an extension of the reasonable meanings of the terms employed in the instrument. In *Rouse v. Rouse*, 76 Kan. 311, 91 Pac. 45, where the agreement was that the property of each party should remain the separate and distinct property of such owner and neither should exercise any right or ownership in the property of the other, and that each might dispose of her property by will or otherwise, with the exception that the husband should not during the lifetime of the wife dispose of his property so as to render nugatory another provision to furnish her proper and comfortable support so long as they live together as husband and wife or in case she survived him so long as she remained his widow, the court held that notwithstanding the exception in the agreement as to support during her lifetime and in her widowhood that the right of inheritance in the husband's property was not barred. In speaking of the contract it was said that:

"We have frequently held that agreements of this character should be liberally construed to carry into effect the intention and purpose of the parties; nevertheless, their terms are not to be extended by mere implication to exclude the right of the survivor to take by inheritance. The reasons are manifest. If such be the intent of the parties it can be readily expressed in appropriate language or in words from which the intention is necessarily implied." (p. 317.)

It was further said that the mere option—

" . . . to dispose of his property by will or otherwise cannot by implication be said to mean that, in the event he failed to exercise such option, the laws of inheritance should be set aside and the wife be left in the same situation as though he had exercised the option." (p. 318.)

In *Getter v. Getter,* 118 Kan. 150, 233 Pac. 1016, where the fair import of the language used in the contract was held to evidence an intention to bar the right of inheritance, it was said that:

"To bar inheritance, an intention to do so must be disclosed by the instrument. Such an intention may not be derived by mere implication from extensions of term meanings beyond just and fair import, or by strained construction; but an express provision covering the subject of succession is not necessary."

Giving the terms of the agreement their ordinary meaning, our conclusion is that they neither expressly nor by fair inference warrant barring the right of inheritance. The import of the language is that each was to hold and control the property then owned by them the same as if they were unmarried. To avoid any doubt as to their meaning they added the explanatory paragraph providing that each might dispose of the property held by him or her by deed or will without the consent of the other, the same as if they were unmarried. The holding and controlling mentioned in the earlier paragraphs of the agreement are defined in the explanatory one and mean no more than that each of the parties while living might dispose of his property by deed or devise without the consent of the other. We conclude that it was not their intention to change the course of descent of property and to take away the right of inheritance given by the statute in any property not conveyed or devised during life. To construe the agreement as excluding inheritance would, we think, be contrary to the fair import of the language of the agreement and would in effect be an addition to its terms. (*Kistler v. Ernst,* 60 Kan. 243, 56 Pac. 18; *Rouse v. Rouse,* supra.) In the Kistler case, *Stewart v. Stewart,* 7 Johns. Ch. 229, was cited with approval, wherein Chancellor Kent said:

"I believe it has been the invariable practice, and that the uniform course of precedents will show it, that when it is intended in a marriage settlement to exclude the right of the husband to her personal property, in the event of his surviving her, and in default of her appointment, an express provision to that effect is inserted in the deed." (p. 245.)

*Hart v. Soward,* 53 Ky. 301, cited in the Rouse case arose upon a contract quite similar in its language to that involved in the instant case. It provided that in the contemplated marriage the woman should hold and possess as her own and for her exclusive benefit all property then owned by her free from the control or

disposition of the one she was about to marry, it being intended that she should hold the property as her separate estate and in the same manner as if she were sole and unmarried. There the wife died intestate and the right of her surviving husband to inherit her property was sustained notwithstanding the agreement. The court said:

"If this agreement contained any provisions on the subject of the right of succession to the property, after the death of the wife, this question could not arise; but, as it only secured to the wife the right to control and dispose of the property during the coverture, as if she were unmarried, and as she made no disposition of it to take effect after her death, the agreement, having accomplished the object of its existence, and the purpose contemplated by the parties in its execution, became, by her death, inoperative, according to its own nature, and left her estate to the disposition of the law." (p. 302. See, also, *Talbot v. Calvert*, 24 Pa. St. 327; *Brown's Adm'rs v. Brown's Adm'rs*, 25 Tenn. 127.)

Plaintiffs cite a number of cases where, under an agreement of parties as to survivorship and inheritance, it was held that the agreements operated to bar inheritance. Each case, however, turns upon plainly expressed intention or language from which the intention to bar was plainly inferable. Much reliance is placed on *McVicar v. McVicar*, 128 Kan. 394, 278 Pac. 36, which involved the interpretation of an antenuptial agreement containing some provisions similar to those in the agreement in question, but in that case the agreement made reference directly to heirship in the property. Among other things, it provided that the party should not acquire by force of the contemplated marriage for herself, her heirs and assigns, or creditors, any interest in the property or estate of the other. That feature of the contract distinguishes the case from those herein cited and upon which the court there determined that "neither George nor Hattie nor their heirs were to acquire any actual, potential or inchoate rights in each other's property as a consequence of their contemplated marriage." (p. 400.)

Our interpretation of the agreement is that the trial court correctly interpreted the agreement and hence its judgment must be affirmed. It is so ordered.