No. 38,082

In the Matter of the Estate of Susan A. Johnson, Deceased. (J. H. Johnson, *Appellant*, v. Joseph Blanchett and Orville Blanchett, *Appellees.*)

(224 P. 2d 1032)

Opinion filed December 9, 1950.

*Russell L. Hazzard,* of Dodge City, argued the cause, and *E. C. Minner,* of Dodge City, was with him on the briefs for the appellant.

*James A. Williams,* of Dodge City, argued the cause, and *C. W. Hughes,* of Dodge City, and *F. N. Cossman,* of Ashland, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: This appeal involves the construction of a prenuptial contract. The only question is whether, by its provisions, the husband renounced his right to inherit under the law of intestate succession a surviving spouse's undivided one-half interest in the property. in question.

In June, 1930, Susan A. Blanchett and J. H. Johnson were about to be married. He owned certain property in the state of Idaho and she was the owner of a quarter section of real estate in Ford county, Kansas. She had two sons, Joseph and Orville, by a former marriage. On June 9, 1930, they executed the following agreement:

"Pre-nuptial Contract.

"Contract made this 9th day of June, 1930, between James H. Johnson and Susan A. Blanchett, both of Fowler, Meade County, Kansas, witnesseth: Whereas the above named parties are about to be married, and each own property, now to the end that each may manage, control, dispose of, alienate and devise said property independent of the other, it is mutually agreed, that the said James H. Johnson is now the owner of Lots Six (6) and Seven (7) in Veazy Park Addition to the City of Boise City, Idaho; that Susan A. Blanchett is now the owner of the Northwest quarter of Section Thirty-six (36), Township Twenty-nine (29) South, Range Twenty-six (26) West, in Ford County, Kansas, and of twelve head of cattle and two head of horses:

"It is mutually agreed that neither of the contracting parties shall acquire any right, title or interest in or to any part of the property hereinbefore described, by virtue of the marriage relation about to be entered into. And that each of the parties hereto may at any time sell, mortgage, assign, dispose of, alienate, will and devise, and manage and control said described property belonging to each separately, as though each party were sole and single, and as though the marriage relation had never existed.

"It is further mutually agreed that the separate ownership herein provided for shall apply only to the property now owned by said parties; and that any and all property by them acquired hereafter shall be owned and held by them separately or jointly according to the laws of the State of Kansas.

"In witness whereof we have hereunto set our hands this 9th day of June, 1930.

"/s/ James H. Johnson
"/s/ Susan A. Blanchett"

(Then follows acknowledgment.)

They were married shortly thereafter and lived together as husband and wife until her death, intestate, in 1948. She left surviving as her only heirs-at-law her husband, J. H. Johnson, and her two sons by the former marriage.

In a probate court proceeding to determine heirship it was held that by virtue of the prenuptial contract the surviving husband was not entitled to inherit any interest in the quarter section of land described in the contract and which she still owned at the time of her death, but that as to all other property owned by her as of her death he was entitled to an undivided one-half interest, the other one-half to go to her sons, share and share alike. In other words, the probate court held that her two sons inherited the full title to the quarter section in question.

On appeal to the district court the findings and adjudication of the probate court were upheld, from which ruling the surviving husband has appealed. No question of homestead is involved and it is admitted by all parties that the only property Susan owned at

the time of her death and which she also owned at the time of her marriage to J. H. Johnson was the quarter section of Ford county land described in the contract. Neither are we concerned with the lower court's disposition of other property owned by her at the time of her death.

And so the question, squarely presented, is whether by the provisions of this contract the husband waived his right to inherit a surviving spouse's interest in the property in question in the event his wife died intestate.

In their briefs counsel for each party have discussed a number of our leading cases on the subject, among them being *Kistler v. Ernst,* 60 Kan. 243, 56 Pac. 18; *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731; *Rouse v. Rouse,* 76 Kan. 311, 91 Pac. 45; *Casey v. Casey,* 84 Kan. 380, 113 Pac. 1047; *Getter v. Getter,* 118 Kan. 150, 233 Pac. 1016; *McVicar v. McVicar,* 128 Kan. 394, 278 Pac. 36; *Hewett v. Gott,* 132 Kan. 168, 294 Pac. 897, and *Bemarkt v. Prouty,* 132 Kan. 228, 294 Pac. 890, in an effort to bolster or overthrow the holding of the lower court that the husband was barred from inheriting. A careful reading of those cases discloses that each was decided upon its own merits, that is, on the basis of the language used in the particular contract under consideration.

It is not disputed that a surviving spouse may bar or limit his or her right of inheritance by a prenuptial contract. When such contracts are fairly and understandingly made, are just and equitable in their provisions, and are free from fraud, deceit and overreaching, they are valid and enforceable and are to be liberally interpreted so as to carry out the intention of the makers. (*In re Estate of Schippel,* 169 Kan. 151, 218 P. 2d 192.)

However, the right to inherit is a statutory right and is one favored by the law. Before a prenuptial contract will be construed to cut off such right the intent of the parties so to do must clearly and unmistakably appear from an examination of the language used, and no strained interpretation of language will be permitted to strip a surviving spouse of his or her inheritable interest in the property of the other spouse who has died. (*McVicar v. McVicar,* supra.) In *Bemarkt v. Prouty,* supra, it was said:

"Can the terms of the instrument be so expanded as to cover the important provision of the right of inheritance? May the court infer from the language used that the parties intended to set aside the law of descents and distribution when the death of either occurred? The expressed intention of the parties is the controlling consideration in the interpretation of such an agreement, and the

rule is that either of the parties cannot be barred from inheritance by a mere implication or a strained construction which may be derived from an extension of the reasonable meanings of the terms employed in the instrument." (p. 230.)

and in *In re Estate of Troemper*, 160 Kan. 464, 163 P. 2d 379, the rule was thus stated:

"It is well-established law that rights of inheritance are not denied to a surviving spouse except upon a clear showing that such rights had been renounced. Contracts relied upon to show such renunciation will not be so construed unless such intention unmistakably appears." [Citing authorities.] (p. 471.)

In support of the lower court's ruling appellee sons rely chiefly on *McVicar v. McVicar*, supra. There the preliminary paragraph of the contract contained language quite similar to that contained in the one before us, and reads:

" 'That whereas, a marriage is about to be solemnized between the said parties; and whereas, the said Hattie L. Booth is the owner and possessed of certain real estate, notes, mortgages, stocks, securities and other personal property; and whereas, the said George A. McVicar is the owner and possessed of certain other real estate and other personal property; and whereas, it is mutually desired and agreed by the said parties that the estate of each of said parties shall remain separate, and be subject to the sole control and use of its owner as well after as previous to the solemnization of said marriage.' "

The contract there entered into is set out in full in the opinion and in the interest of brevity will not be repeated here, but in substance it reciprocally provided that the estate of each should remain and be his or her separate property subject entirely to his or her individual control and use, the same as though the parties were unmarried, and that neither should acquire as a consequence of the contemplated marriage for him or herself, heirs, assigns or creditors, any interest in the property or estate of the other. Further, each of the parties waived, released and relinquished all right to the use and control, including the income therefrom, of the separate property and estate of the other, and each was given the right to dispose of any or all of his or her separate property or estate by deed, will or otherwise, without the consent of the other.

This court held that by the execution of the contract the parties agreed that their respective properties should remain and be their several respective properties the same as though each of them were unmarried, and that the widow had waived for herself and her heirs any interest in her husband's property or estate.

It would appear that the basis of the decision rested on the fact that the contract specifically provided that the wife was not to

acquire, as a consequence of the contemplated marriage, for herself or her heirs any interest in the property or *estate* of the husband, and such reasoning was cited with approval in *Bemarkt v. Prouty,* supra, page 232.

Counsel for appellees contend that the contract before us, taken as a whole, clearly evidences the intention that the right of each to inherit from the other any of the property specifically described in the first paragraph be cut off; that the language in the first paragraph is merely preliminary to the real intent and purpose set out in the two sentences in the second paragraph; that the word "acquire" refers to future interest after death as well as present interest; that by the use of the words "right" and "interest" is meant the inchoate right of inheritance, and that by the language of the third paragraph it is clear that the two sentences in the second paragraph refer only to the property then owned by the parties, which is described in the first paragraph, and it is argued that the word "acquire" should be given the same construction as it is contended was given in the McVicar case.

We are unable to agree with this contention of appellees. To do so would do violence to the rule heretofore announced to the effect that rights of inheritance are not denied to a surviving spouse unless such intention clearly and unmistakably appears from an examination of the language used and that no strained interpretation of language will be permitted to strip a surviving spouse of his or her inheritable interest. Nowhere in this contract do we find any language clearly and unmistakably leading to the conclusion that either party intended to waive his or her right of inheritance upon the death of the other, intestate. It is true that each of the parties was empowered to manage, control, sell, mortgage, assign, dispose of, alienate, and will and devise his or her separate property described in the first paragraph without the consent of the other, but, as was said in *Rouse v. Rouse,* supra:

"The agreement might have provided that in case the wife survived the husband she should take no share in his estate by inheritance, but the provision that the husband should have the option to dispose of his property by will or otherwise cannot by implication be said to mean that, in the event he failed to exercise such option, the laws of inheritance should be set aside and the wife be left in the same situation as though he had exercised the option." (pp. 317, 318.)

To hold that the right of inheritance in this case is cut off would necessarily be the result of a strained interpretation of the very

language used, and that, under all of the authorities, is something in which we are not permitted to indulge. Furthermore, it appears to us that a very logical and reasonable interpretation of the contract before us is that each retained the right to manage and dispose of, by will or otherwise, his or her property, then owned, during his or her own lifetime and·that in the event of intestacy the survivor would not be barred from his or her statutory right of inheritance in such property. We have given careful consideration to each and every contention advanced by counsel for appellees, but are forced to the conclusion the lower court erroneously ruled that by virtue of the contract appellant husband was barred from his right of inheritance of an undivided one-half interest in the quarter section of land in controversy.

It therefore follows that the judgment of the lower court must be and is hereby reversed.