No. 38,721

In the Matter of the Estate of Raymond D. Gustason, Deceased, GLADYS A. GUSTASON, *Appellant* and *Cross-Appellee*, v. SUSIE DEAN, et al., *Appellees* and *Cross-Appellants*.

(250 P. 2d 837)

Opinion filed December 6, 1952.

A. E. Kramer, of Hugoton, argued the cause, and Bernard E. Nordling, of Hugoton, and Forest V. McCalley, of Wichita, were with him on the briefs for the appellant and cross-appellee.

J. S. Brollier, of Hugoton, argued the cause, and Paul A. Wolf, of Hugoton, was with him on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

THIELE, J.: The question in this appeal is whether Gladys A. Gustason, widow of Raymond D. Gustason, who died intestate, waived her right to inherit any part of his estate by reason of the property settlement agreement between them to which reference is later made.

Although the record as abstracted shows the question was first raised in the probate court as a defense to the application of Gladys A. Gustason for letters of administration on her deceased husband's estate, and at subsequent times, we do not find it necessary to detail all of those proceedings for it appears without dispute that Susie Dean, Charles Gustason, Ida O. Coffey, Elsie Hall Moyer, Rose Orton, Edward Gustason and Bessie Zeiler, who were brothers and sisters of Raymond D. Gustason, although having previously raised the question, filed a demand in the probate court asserting their right to be declared his heirs and entitled to his estate; that the administrator of the estate filed his petition for final settlement, and that the demand and the petition for final settlement were transferred to the district court for a determination of the issues and for all orders necessary or incident to a final settlement of the estate. Thereafter Gladys A. Gustason filed an answer in the district court, "for the purpose of clarifying" her position, in which she alleged her marriage to Raymond D. Gustason, his death, that she survived as widow and was entitled to inherit his estate. She admitted execution of the property settlement agreement but alleged it was made for the purpose of making a division of the property owned by the parties in order that each could manage, control, dispose of, alienate and devise his property independent of the other but that the parties did not intend to waive their rights of inheritance and that the contract did not by its terms effect a waiver of any such right.

When the above demand and petition came on for hearing in the district court certain facts were stipulated and no evidence was introduced other than the probate court files and the stipulation. For present purposes those facts were as follows:

Raymond D. Gustason, who married Gladys A. Gustason on September 11, 1922, died intestate on July 11, 1950, leaving her, but no children or adopted children or their issue surviving him. He was also survived by the brothers and sisters above named. On October 27, 1949, Gladys A. Gustason and Raymond D. Gustason entered into a property settlement agreement which recited they were wife

and husband but that domestic difficulties had arisen which made it impossible for them to live together longer and they deemed it to their best interest to make a full and complete settlement of property rights, and they therefore contracted and agreed that a division be made, details of which are not set forth in the abstract, and that in consideration thereof Gladys A. Gustason did forever release Raymond D. Gustason from any and all obligations to support her or for alimony and she acknowledged full satisfaction of any and all claims which she might have in any of his property and she released, relinquished, transferred, conveyed and quitclaimed to him described real estate (of which he died the owner), and certain personal property. The third paragraph of the contract recited:

"The parties hereto hereby agree that a full disclosure has been made between them as to all property and property rights owned by them or either of them, jointly or severally, and that the foregoing contract and settlement is a full, fair, equitable and complete settlement of all rights in property owned or possessed by them or either of them, jointly or severally, *and each of the parties hereto hereby agrees never to make any claim to any of the property herein allotted to the other, or to any property hereafter acquired by either of the parties hereto either in life or by inheritance* and each agrees that the other may own, hold, use, encumber, alienate, lease or convey any of said property herein allotted to him or to her or any property hereafter acquired as his or her own separate property to the same extent and with like effect as though the parties to this agreement had never been married to each other, but if such requirement should be made then the other party will join in any requested conveyance or transfer of any property." (Emphasis supplied.)

The remainder of the agreement is not of present importance. It was expressly stipulated that the agreement was prepared at the request of Gladys A. Gustason, that each party to the above agreement had executed and exchanged deeds to the real estate going to each, had fully performed all of the terms of the contract, and that Gladys A. Gustason, at the time of the death of Raymond D. Gustason, was residing on lands which she received under the settlement.

For present purposes it may be said the district court found that the property settlement agreement, supplemented by quitclaim deeds, gas transfer orders and a division of personal property, was a full, complete and final settlement of all property rights between Gladys A. Gustason and Raymond D. Gustason, including the right of inheritance by Gladys A. Gustason from Raymond D. Gustason, and that his brothers and sisters, naming them, were entitled to the net estate of Raymond D. Gustason and the title to all property owned by him at the time of his death and remaining a part of his

estate should be assigned to and vested in them, and it rendered judgment accordingly. .

Gladys A. Gustason filed a motion for a new trial which was denied and in due time she perfected her appeal to this court, specifying as error that the trial court erred in holding she had waived her right of inheritance and in denying her motion for a new trial.

Appellees have filed a cross-appeal from a ruling of the district court that an order of the probate court determining the property settlement agreement to be valid was not *res judicata*. Unless the appellant's appeal is sustained there is no necessity to discuss the cross-appeal.

Appellant's argument that the property settlement agreement did not bar her right to inherit her husband's estate is twofold. Ignoring the language of the agreement under consideration, she first contends that before such a postnuptial agreement may be construed to disinherit the widow it must appear clearly and unmistakably from an examination of the entire instrument that it was the intention of the parties to do so, and that no strained interpretation of the language of the agreement will be permitted to strip her of her inheritable interest in the property of her husband, citing *In re Estate of Johnson*, 170 Kan. 308, 224 P. 2d 1032, and some of the cases cited therein. We are in accord with what was said in that case, but a mere reading of the contract there under consideration discloses that there was ample ground for this court to hold that nowhere in the contract was there any language clearly and unmistakably leading to a conclusion that either party intended to waive his right of inheritance upon the death of the other intestate. The general rule was stated that such contracts, fairly and understandingly made, just and equitable in their provisions, free from fraud, deceit and overreaching, are valid and enforceable, and are to be liberally interpreted to carry out the intention of the makers. It was also recognized that a reading of our decisions discloses that each was decided upon its own merits, that is, on the basis of the language used in the particular contract.

Appellant also directs attention to *In re Estate of Troemper*, 160 Kan. 464, 163 P. 2d 379, and *McVicar v. McVicar*, 128 Kan. 394, 278 Pac. 36, both of which are commented on in *In re Estate of Johnson, supra,* and *Bemarkt v. Prouty*, 132 Kan. 228, 294 Pac. 890, which is merely cited. We shall not review the comment. Extended discussion of the *Troemper* and the *Bemarkt* cases is un-

necessary. In neither of them was there any language susceptible of interpretation that rights of inheritance were cut off. As we read the *McVicar* case, it does not help appellant. The contract there involved, which is set out in full in the opinion, was in contemplation of marriage and summarily stated each party was to retain his or her property and to handle and dispose of it as though the parties were not married, the contract being made binding on the heirs, assigns and legal representatives of both parties. There was no specific waiver of any right of inheritance. Under the whole contract the trial court was of the opinion that she had waived it. This court on appeal reviewed some of our authorities and affirmed the trial court.

Appellant also relies on the dissenting opinion in *Marty v. Marty*, 111 Kan. 120, 206 Pac. 324. The court, however, was of the opinion that an agreement, set out in full in the opinion, and to which reference was made, effected a relinquishment of the right to inherit. It is noted that the agreement contained no specific provision to that effect.

Although appellant directs our attention to other decisions, none of them, nor any which our own research covered, hold that where language was used like that in the case at bar, the right of inheritance was not cut off. Those interested will find many such cases in West's Kansas Digest, Husband and Wife, Subdivision II, and in Hatcher's Kansas Digest, Husband and Wife, Subdivision IV, G.

The rule is that contracts to settle property rights between a husband and wife, whether made before or after marriage, are to be liberally construed to carry out the intention of the parties (*Dunsworth v. Dunsworth*, 148 Kan. 347, 81 P. 2d 9, and cases above mentioned) and that the rules governing the construction of contracts generally are applicable to the construction of property settlement contracts (*In re Estate of Hill*, 162 Kan. 385, 176 P. 2d 515).

In *In re Estate of Winter*, 164 Kan. 615, 192 P. 2d 186, a husband and wife had made a contract reciting, in part:

"Each party hereto agrees never to set up any claim to any of the property hereto allotted to the other, or any after-acquired property either in life or by way of inheritance." (l. c. 616)

After the husband's death the widow sought to have a homestead and a widow's allowance set off to her. The trial court and this court held that she was bound by her contract and could not have judgment.

In *Porter v. Axline*, 154 Kan. 87, 114 P. 2d 849, where the contract

under consideration contained an express waiver of the right to take by descent and distribution and a provision the contract was binding on the parties, their heirs and personal representatives, it was held the widow was precluded from claiming an allowance or homestead rights.

In view of the express language used in the agreement now before us, we deem it unnecessary to review our cases holding that some other language was sufficient to cut off the right of inheritance.

Appellant makes a further and involved argument that under the language emphasized in the quotation above, the parties did not waive rights of inheritance. By a process of division of language she would have the contract read that each party agrees never to make any claim to the property allotted to the other and never to make any claim to any property thereafter acquired by the other either in life or by inheritance, or in other words that "by inheritance" refers to the manner in which the other procures after-acquired title, and that so construed the agreement did not cut off her right of inheritance in her husband's estate. We are not disposed to take up the contract, paragraph by paragraph, sentence by sentence, clause by clause and phrase by phrase, to torture out a meaning that was obviously not the intent of the parties. Although we have heretofore shown emphasis on the particular language used by the parties, it is noted that the sentence continues that each may hold, use, etc., any of the property allotted or "any property hereafter acquired" as his own to the same extent as if the parties had never been married. Examination discloses the language here used is substantially the same as was before the court in *In re Estate of Winter*, supra. In our opinion the language used in the agreement is not susceptible of the construction contended for by the appellant and that the phrase "by inheritance" refers to the manner in which title to after-acquired property might be obtained, but on the contrary the phrase is part of and is to be read in connection with the preceding language and as follows: Each party hereto hereby agrees never to make any claim to any of the property (of the other) either in life or by inheritance. In our opinion the language used clearly indicates an intention that each party waived his or her inheritable rights in all of the property of the one who died first.

We conclude that the trial court did not err in its judgment that the property settlement agreement was a full, complete and final settlement of all property rights including the right of inheritance. In view of that conclusion we need not discuss the cross-appeal.

The judgment of the district court is affirmed.