In re WRIGHT'S ESTATE.

WRIGHT v. WRIGHT et al.

Nos. 35911, 35912.

Supreme Court of Oklahoma.

March 9, 1954.

Rehearing Denied April 13, 1954.

Carder & Carder, Hobart, R. T. Plumlee, Cordell, for plaintiff in error.

Jones & Wesner, Cordell, Meacham, Meacham, Meacham & Meacham, Clinton, for defendants in error.

BLACKBIRD, Justice.

On the 4th day of October, 1951, John E. Wright, then a resident of Washita County, Oklahoma, died intestate leaving surviving him as heirs at law, his wife, Ethel C. Wright, two sons and two grandchildren.

On October 8, 1951, Ethel C. Wright, wife of deceased, filed in the County Court of Washita County an application for the appointment of an administrator in which she waived her preference right to the appointment and requested the appointment of E. A. Stubblefield. On October 18, 1951, J. Carl Wright, a son of deceased by a former wife, filed an objection to the appointment of E. A. Stubblefield as administrator on the ground that Ethel C. Wright, by the execution of an antenuptial agreement, waived her right to inherit from the estate of her deceased husband and also waived her right to designate the person

to be appointed administrator. The Court sustained the protest and appointed J. Carl Wright administrator. He then proceeded to administer the estate. During the course of said administration, after a hearing upon the widow's petition to set aside to her, as such, the estate's exempt personal property including the proceeds of a previous sale of certain allegedly exempt personal property, the County Court entered an order denying said petition as to a portion of said property. At the close of the administration, the Court entered a final decree distributing the entire estate to the sons and grandchildren and excluding appellant from participating in the distribution of the estate on the ground that she had renounced her right so to do by the execution of an antenuptial agreement.

Appellant perfected three separate appeals to the District Court from the above-described orders and final decree. In said Court said appeals were consolidated for trial and after trial de novo, the district court entered judgment affirming both the orders and the final decree. From said judgment, appellant has filed two separate appeals docketed in this court as above shown. These appeals have, for the purpose of briefing, been consolidated, and will be so considered for the purpose of decision herein. Our reference to the widow as appellant will hereinafter be continued and the son, Carl, both as administrator and distributee, together with the other distributees of the estate, will be referred to as appellees.

It is agreed by all parties that the only question involved is the construction to be placed upon the instrument hereinbefore referred to, and held by the county and district courts to constitute an antenuptial agreement and an agreement by which appellant has renounced her statutory right to inherit as an heir of her deceased husband. The instrument provides:

"Know all men by these presents that I, Ethel C. Stubblefield, have this day released J. E. Wright his heirs and assigns from all liability or recourse which might accrue from our relationship as man and wife for the money consideration of $500.00 Paid in hand and receipt of which is hereby acknowledged. Signed this Feb 8 1924

"Ethel Stubblefield.
"Witness
"LaNora Wright"

It is contended by appellant that the instrument does not constitute an antenuptial agreement and, by its execution, she did not renounce her right of inheritance.

With this contention we agree. The agreement is not in the usual form of an antenuptial contract. It makes no reference to property rights nor does it purport to settle property rights between the parties. It makes no reference to heirship or the right to inherit nor does it contain any provision for the distribution of the property between the parties upon the death of either. There is no express language in the instrument indicating an intent on the part of appellant to renounce her right to inherit as an heir of her husband, nor is there any language therein from which such intent may be inferred or implied. In Girard v. Girard, 29 N. Mex. 189, 221 P. 801, 35 A.L.R. 1493, the court held:

"Where a separation contract between husband and wife does not, by express terms or by necessary implication, provide that she waives, releases, relinquishes, and renounces her right to inherit from him upon his death, intestate and without issue, such right still remains with and may be enforced by such surviving widow."

In that case the agreement contained the following language:

"'Does hereby agree to and with her husband, the party of the first part, that she will and hereby does by this agreement, release all right, title or interest of any kind whatsoever, in law or in equity, which she may now have or possess, to any and all property of any kind or description, real or personal now owned by or hereafter acquired by the party of the first part, during his natural life,' * * *."

The court held the agreement did not constitute an antenuptial agreement and that the wife did not by its execution renounce her right to inherit as an heir of her husband. In disposing of the matter the court said:

"We set off to consider such contract with the well-established rule of construction in mind that, in instances of this kind, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends; they will not come to the aid of such contracts so as to deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away, and, to reach such a conclusion, the contract must not be of doubtful interpretation, but must, by express terms or by necessary implication, clearly so provide. 30 C.J. 646; Jones v. Lamont, 118 Cal. 499, 50 P. 766, 62 Am.St.Rep. 251; In re Peet's Estate, 79 Iowa 185, 44 N.W. 354; Baughman v. Baughman, 283 Ill. 55, 119 N.E. 49, Ann. Cas. 1918E, 895; Richardson v. De Giverville, 107 Mo. 422, 17 S.W. 974, 28 Am.St.Rep. 426."

In Moon v. Bruce, 63 S.C. 126, 40 S.E. 1030, the court held:

"A contract of separation provided that, in consideration of certain money and other property paid by the husband, the wife forever discharged her husband, his heirs and executors, from any claims and demands in law and equity. Held, that as a claim for dower never could exist against her husband, since it could not arise until his death, the instrument was insufficient as a release of dower."

In that case, after discussing the instrument there involved, the court said:

"* * * If the intention was to agree to release dower, is it not remarkable that the draftsman, with his wonderful vocabulary of legal terms, should omit to mention dower? It is true, the plaintiff agrees to release 'A. H. Moon, his heirs, executors, and administrators * * * all causes of action * * * claims and demands whatever * * * which against the said A. H. Moon, I (the plaintiff) ever had, now have or which I, my executors, administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing, whatsoever, from the beginning of the world to the end of time.' This seems very comprehensive and sweeping; but it should be noticed that the causes of action, claims, and demands released were such as then existed or may hereafter exist 'against A. H. Moon, his heirs, executors, and administrators.' The claim of dower did not, and never could, exist against A. H. Moon, her husband, since it could not arise until his death; nor could such claim ever exist against the heirs, executors, and administrators of A. H. Moon, as such. * * *"

See, also, Johnson v. Blanchett, 170 Kan. 308, 224 P.2d 1032; 16 Am.Jur., "Descent and Distribution", par. 112 and the Annotations at 35 A.L.R. 1505 and 81 A.L.R. 693.

It is contended by appellees that the circumstances under which the instrument was executed should be taken into consideration in construing the contract and in arriving at the intention of the parties. Evidence has been introduced tending to show such circumstances. In this respect appellant testified that she was the second wife of deceased; that he was first married to Addie McClure who died on May 13, 1915. She was a sister of appellant Ethel C. Wright who, at the time of her death, was married to Lee Stubblefield. They were, however, not then living together as husband and wife and had been separated for some time. Shortly after the death of his first wife, at the request of Mr. Wright, she went to his home and was engaged as a housekeeper and to take care of the children. Her mother was living in the home with them. She remained and kept house for deceased and took care of his children for three and one-half years when she and her mother

left and went to live at Sentinel, Oklahoma. She received no compensation for her service. She thereafter obtained a divorce from her husband.

On or about February 23, 1924, Mr. Wright requested her to come to his home and he would leave a check there for her. When she arrived Mr. Wright was not there but his daughter who was, presented her with a check in the sum of $500, together with the instrument in question written entirely in Mr. Wright's handwriting, which she then signed. Appellant further testified that she did not read the instrument and did not know exactly why the check was given her but that prior to that time she had talked with Mr. Wright about buying a home, and she assumed the check was left for a payment on such prospective purchase; that she used the money for this purpose; that at the time she signed the instrument there was no agreement between her and Mr. Wright that they would become husband and wife; and that there was no marriage agreement entered into between them at that time. They were not married until thirteen months thereafter and they were engaged only one week prior to the marriage. Appellant further testified that she had never entered into an agreement with Mr. Wright for the settlement of property rights between them.

Earl Stubblefield, son of appellant, testified he knew his mother had bought a home in Sentinel; that it was paid for in part by the $500 check given her by Mr. Wright, now deceased; that in a conversation with him relative to the check, Mr. Wright said it was given to his mother in appreciation for her service in taking care of the children.

Construing the instrument in question in connection with the circumstances surrounding its execution, we conclude that the instrument does not constitute an antenuptial contract settling property rights between the parties and that appellant did not, by its execution, waive or renounce, or intend to renounce, her right of inheritance as an heir of her husband. Nor did it have the effect of depriving appellant of any other rights or remedies to which she is entitled as the surviving widow of the decedent. It therefore follows that the judgment herein appealed from was erroneous. Accordingly, it is reversed and remanded with directions to the District Court to set it aside and proceed in a manner not inconsistent herewith.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and O'NEAL, JJ., concur.

WILLIAMS, J., concurs in result.