No. 45,651

In the Matter of the Estate of Lucile Hanson Taylor, Deceased. EBBY HALLIDAY ACERS, et al., *Appellants* and *Cross-Appellees,* v. ERNEST C. TAYLOR, *Appellee* and *Cross-Appellant.*)

(469 P. 2d 437)

Opinion filed May 9, 1970.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn and Cates, of Wichita, argued the cause, and Charles I. Platt, of Junction City, was with him on the briefs for the appellants and cross-appellees.

*William D. Clement,* of Hoover, Schermerhorn, Clement and Schuley, of Junction City, argued the cause and was on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

KAUL, J.: In this appeal and cross-appeal we are called upon to review the district court's construction of an antenuptial agreement and the application thereof to the estate of Lucile Hanson Taylor, deceased, who entered into the agreement with Ernest C. Taylor on November 23, 1955. They were married the following day.

Mrs. Taylor died on February 1, 1966. She left a will, dated February 22, 1962, in which the appellants and cross-appellees, her four children by a previous marriage, were designated legatees and devisees. Mr. Taylor did not consent to the will.

No challenge is made as to the validity of the antenuptial contract or the will.

For the sake of convenience and brevity, Mr. and Mrs. Taylor will be referred to hereafter as Ernest and Lucile.

In contemplation of their marriage Ernest and Lucile entered into the contract for the declared purpose of agreeing to their respective rights in each other's property after a full disclosure by each. The property of each was set out, and it was agreed that all of the property belonging to each party before the marriage should remain forever in their respective personal estates and would include all earnings or income which might accrue or stem in any manner from the respective properties. The parties agreed that each would sign with the other all documents which might be necessary in case either decided to mortgage, lease or convey any of his or her respective property.

Ernest agreed to assume from his own personal estate the necessary expenses for the support and maintenance of Lucile and he set out certain of his property which would be received and inherited by Lucile in case he should predecease her. It was further agreed that in the event Lucile should predecease Ernest all of the property which she brought to the marriage, and owned by her at the time of her death, should go to her children or as she should direct by will.

It was recited that nothing in the agreement should be construed as a bar to either party giving any of his or her property to the other party by will or otherwise.

What the term "property" as used in the contract would include was set out as follows:

"It is agreed that the term 'property' used herein does and shall include all

the property set out herein and any other property real, personal or mixed, acquired by exchange of such property or purchase from funds now on hand, and any investment or reinvestment of same, as well as as accruals, increase in value together with improvements and betterments, rents, royalties, profits and dividends arising therefore."

This paragraph was followed by the provision which gave rise to the litigation before us. It reads as follows:

"It is further agreed that this agreement shall have no application to any property acquired by these parties during their marital relationship as a result of their joint and mutual efforts."

The question squarely presented is whether the property, both real and personal, owned by Lucile at the time of her death and shown to have been acquired by the parties during their marital relationship, was excluded from the application of the provisions of the antenuptial agreement by reason of the provision just quoted.

After Lucile's death her will was filed for probate in the probate court of Geary County. Lee Hornbaker, who was nominated as executor in the will, was appointed by the probate court. He filed an inventory and appraisement on June 28, 1966, which disclosed all the property owned by Lucile or in which she held an interest at the time of her death.

In due course, Ernest filed his election to take under the law rather than under the will.

The real property inventoried consisted of six parcels of real estate in or near Junction City. It was scheduled and described as follows:

Item No. 1. House, 411 West 10th, Junction City, owned by Mr. and Mrs. Taylor as tenants in common.

Item No. 2. House, 1227 Westside, Junction City, owned by Mrs. Taylor.

Item No. 3. House, 1306 North Washington, Junction City, owned by Mr. and Mrs. Taylor as joint tenants with right of survivorship.

Item No. 4. House, 701 South Webster, Junction City, owned by Mr. and Mrs. Taylor as tenants in common.

Item No. 5. Business property, 1118-20 North Washington, Junction City, owned by Mr. and Mrs. Taylor as tenants in common.

Item No. 6. A tract of 3,726 acres and a 2-story house thereon, known as the Higgs Farm, owned by Mrs. Taylor.

The inventory included a substantial amount of furniture and household goods, consisting of a wide assortment of glassware,

cutlery, furniture and miscellaneous items, requiring over ten pages of the record for the listing thereof. The furniture and household goods, including a 1965 Plymouth automobile, were appraised at $41,584.00. Many of the miscellaneous items were described as antiques by several witnesses.

The executor filed a petition in the probate court asking that the will and antenuptial agreement be construed; that the court enter an order for distribution of the real and personal property of the decendent in accordance with the terms of the antenuptial agreement and of the will of decedent; and further that the court make such order as is necessary and proper upon the petition filed by Ernest for homestead and statutory allowances.

The executor's petition was transferred to the district court of Geary County by and with the consent of all interested parties.

A pretrial conference was had at which the parties stipulated to most of the facts, which have been recited, and defined the issues to be determined by the district court.

The appellants filed a pleading in the district court in which they claimed that all of the personal property scheduled in the inventory as furniture and household goods were acquired by the use of the sole and separate funds of decendent and that such personal property was not of the nature and character of property subject to any homestead or statutory allowance claims of a surviving spouse and that according to the terms of the antenuptial agreement such property was the sole and separate property of decendent and should pass in accordance with the provisions of decendent's will.

With respect to the real property scheduled in the inventory appellants claimed a one-half interest in Item No. 1; the full interest in Item No. 2; an undivided one-half interest in Item No. 4; an undivided one-half interest in Item No. 5, and the full interest in Item No. 6; that such interests were acquired by decendent through the use and reinvestment of her sole and separate property and funds; that in accordance with the provisions of the antenuptial agreement the interests claimed in real property were the sole and separate property of decendent at her death; and that title thereto passed in accordance with the applicable provisions of decendent's will.

Ernest also filed a pleading in which he alleged that none of the property listed in the inventory was acquired by funds owned by

decedent prior to their marriage, with the exception of a small amount of household furnishings and goods at 914½ North Washington. He alleged that each of the real properties, described in the inventory, was acquired by his own funds or from funds accumulated by the parties subsequent to the marriage.

With respect to Item No. 3, the house at 1306 North Washington, Ernest asked that it be set over to him as the surviving joint tenant. As to the other five parcels of real estate, Ernest claimed that as the surviving spouse, having elected to take under the law, he was entitled to one-half of the interest owned by Lucile in each of the properties. At the trial both parties submitted parol testimony and documentary evidence relating to the acquisition of the real properties.

The trial court, by memorandum decision, generaly ruled that all of the property inventoried was acquired subsequent to the marriage of the parties by their joint and mutual efforts and was not controlled by the antenuptial agreement.

Findings of the court pertinent to this appeal are as follows:

"(6) That said agreement is applicable only to the property held by the individual parties at the time of the making of the said agreement, and is not controlling as to the property acquired after marriage, unless · there was a tracing of funds to the after-acquired property. The court relies upon the following statement found in the Antenuptial Agreement. 'It is further agreed that this agreement shall have no application to any property acquired by these parties during their marital relationship as a result of their joint and mutual efforts.'

"(7) That there was no evidence presented showing any tracing of funds from property set forth in the Antenuptial Agreement to any property inventoried in the estate.

"(8) That the use of the phrase 'as a result of their joint and mutual efforts' is legalese and is used merely to differentiate from property, real or personal, acquired after the marriage from funds of the parties held at the time of the Antenuptial Agreement or acquired by the reinvestment of funds secured by the sale of property held at the time of the said agreement.

"(9) That all the following real property was purchased or contracted for subsequent to the marriage. The title as shown is by stipulation of the parties:

(The court lists the real properties showing the title to each as stipulated by the parties.)

"(10) That the exhibits admitted incorporated herein by reference and the manner in which the property is titled represented an attempt by the parties to keep their interests equal in the property acquired after the marriage.

"(11) The court considered the notation on Exhibit 1 dated 15 June 1959, and the subsequent deed, Exhibit 2, to the same property, dated 5 April 1963.

"(12) The court, based upon the above findings, finds that the Antenuptial Agreement does not exclude Ernest C. Taylor, spouse of the deceased, from

his rights of inheritance as the husband as provided for under the laws of the State of Kansas, as to all property, real and personal, owned by the decedent at the date of her death, the same being specifically set forth in the inventory made a part of this decision, the exception being personal furniture described in the Antenuptial Agreement as being located at 914½ North Washington Street, Junction City, Kansas, and owned at the time of said agreement by the decedent.

"(13) The court, based upon its finding No. (12), and the fact that Ernest C. Taylor, husband of the decedent at the time of her death, did not approve or agree to the admitted will, finds that the election of surviving spouse to take under the law, and the order to file the same of record, are sufficient to entitle Ernest C. Taylor to a one-half interest in the property, both real and personal, held by the decedent at the time of her death, subject to the exception noted in (12) above.

"(14) The court finds that the devisees and legatees under the will shall take according to the will, subject to the finding made in (13) above."

The court further found that no homestead had been established by the parties and, therefore, Ernest was not entitled to homestead rights in any of the real properties.

At the time of Lucile's death, she and Ernest were living in a residence known as 339 West 8th Street, Junction City, in which Lucile held a life estate. The record title to this property was in Ebby Halliday Acers, daughter of Lucile.

In finding No. 20 the court found that Ernest was entitled to the statutory allowances of personal property accorded a spouse under the laws of Kansas.

Two days after filing the memorandum, the court, apparently on its own motion, changed finding No. 20 entering an order as follows:

"Paragraph (20) under 'Findings of Fact and Conclusions of Law' should be changed to read as follows:

"(20) The court finds that Ernest C. Taylor is entitled to the statutory allowances for personal property, the same being wearing apparel, furniture, household goods, utensils necessary for the operation of the household, located at 339 West Eighth Street, Junction City, Kansas, and the sum of $750 for other personal property at its appraised value, equal to said sum."

The appellants attacked the trial court's decision by a posttrial motion which was overruled in all respects except as to finding No. 20 dealing with the statutory allowances.

The trial court clarified the intended effect of finding No. 20 by the following rulings:

"(4) It was, and is, this Court's intention by paragraph 20 to set over to Ernest Taylor those properties located at 339 West Eighth Street necessary for the operation and the proper functioning of a home.

"(5) Because of the uniqueness of the other items contained in said property, the same being antiques collected by the deceased, and in many instances being of more than one kind, i. e., several sets of dishes, several china cabinets and/or breakfronts, the Court does not believe this property falls within the purview of the statutory allowances.

"(6) To be more specific, the Court intends that Mr. Taylor have as his own and separate property one set of living room furniture, one set each of bedroom furniture and of dining room furniture, sufficient china to eat from, and any other item not specifically enumerated which is necessary for the operation of his household."

In their posttrial motion, appellants concede the trial court's rulings were correct as to the three tracts of real estate, which we have shown as Items Nos. 1, 2 and 3. Thus, we are concerned on appeal with only the three remaining parcels of real estate and the personal property inventoried as household goods and effects.

An application for a stay of judgment was granted, conditioned on appellants filing a supersedeas bond in the amount of $20,000.00. It was further ordered that Ernest might retain possession of the spouse's allowance made by the court if he posted a $7,000.00 bond, conditioned that, if ordered, he return the property awarded to him as spouse's allowance in as good condition as when taken. With respect to the bond required of Ernest the court further ruled:

"It is further by the court ORDERED that Ernest C. Taylor shall post a bond herein in the amount of $7,000.00 protecting the respondents other than Ernest C. Taylor, conditioned that he will deliver such property awarded to him as his 'spouse's' in as good condition as it now is, if such return is ordered by the Supreme Court of the State of Kansas in the appeal now pending. It is further by the court ORDERED that if the decision of the District Court with respect to the spouse's allowance is affirmed or decided favorably to respondent, Ernest C. Taylor, upon the appeal to the Supreme Court, then the other respondents shall be liable for the cost and expenses of obtaining said bond and Ernest C. Taylor shall be entitled to all damages and expenses recoverable by law under a supersedeas bond."

On appeal, appellants challenge the trial court's judgment in awarding Ernest one-half of Lucile's interest in the three parcels of real estate, in setting off a spouse's allowance to Ernest, and in awarding him one-half of the remaining personal property. Appellants also appeal from the court's order concerning the conditions pertaining to the $7,000.00 bond which Ernest was required to post.

Ernest has cross-appealed from the award of his statutory allowance. He claims that he was entitled to all of the inventoried

items as a statutory allowance of household goods and effects to a surviving spouse.

With respect to the real estate appellants argue the trial court failed to give effect to certain recitations in deeds conveying the three parcels involved.

The house at 701 South Webster, to which we have referred as Item No. 4, was acquired in 1957. Title was taken by Ernest and Lucile as tenants in common. On June 15, 1959, Ernest conveyed to Lucile by warranty deed. In the deed it was recited:

". . . Grantor renounces and disclaims any right of inheritance in and to the property. It is the intent and purpose of this instrument that the described property be and become the sole and separate property of grantee."

On April 6, 1963, by warranty deed it was reconveyed to Ernest and Lucile, the deed reciting:

"This is a deed from wife to her husband and herself to place the ownership of the subject property in the grantors as tenants in common and in order to properly reflect the ownership of the property. There is no consideration other than as above stated."

The business property, previously referred to as Item No. 5, was acquired by Ernest on May 13, 1960. On November 7, 1960, he conveyed an undivided one-half interest to Lucile. This later deed contained the following recitation:

"This a deed from husband to wife of an undivided one-half interest in and to the described property. The property was purchased by the parties in May, 1960, and through inadvertance the title was taken in the name of the grantee. The parties are each contributing to the purchase price and the intent and purpose of this deed is to reflect the facts and to show the parties as tenants in common as to the property, each owning an undivided one-half interest."

The Higgs Farm, to which we have referred as Item No. 6, was acquired on March 1, 1961, and title taken in Ernest and Lucile as tenants in common. On March 3, 1965, Ernest conveyed to Lucile by warranty deed which contained the recitation:

"(Conveyance to effect division of property, no Monetary value involved)"

Appellants contend the recitations in the deeds brought about an ambiguity necessitating the consideration of circumstances attending and surrounding the execution of said deeds in order to determine what was meant by the parties. They also contend that since Ernest and Lucile had executed an antenuptial agreement, creating the idea of separate and individual estates, the recitals of the deeds were intended to carry forward that idea and the recitations, that the conveyances were to effect a division of property

or were to properly reflect ownership, were inserted to show that the parties were truly dividing assets between themselves and were doing so to the exclusion of the other party.

The trial court found to the contrary, basing its decision on the undisputed facts established by the documentary evidence, that all of the real property was acquired subsequent to the marriage and, on the further ground, that there was no evidence tracing any funds derived from the property of Lucile set forth in the agreement into the inventoried property. The court concluded the contract did not apply to any of the inventoried property and, therefore, Ernest's right to inheritance was not barred.

The trial court found that the recitations in the deeds indicated an attempt by the parties to keep their interest equal in property acquired after marriage, but that in so doing they did not exclude the right of inheritance of a party as surviving spouse in such after acquired property.

We agree with the reasoning of the trial court.

It is a familiar rule in this jurisdiction that when antenuptial contracts are fairly and understandingly made, are just and equitable in their provisions, and are free from fraud, deceit and overreaching, they are valid and enforceable and are to be liberally interpreted so as to carry out the intention of the makers. (*In re Estate of Johnson*, 170 Kan. 308, 224 P. 2d 1032; Vol. 5A West's Kansas Digest, Husband and Wife, § 29[9]; Vols. 1-3 Hatcher's Kansas Digest, Rev. Ed. Perm. Supp., Husband and Wife, § 26.)

It clearly appears from the language of the instant contract that the parties intended to preserve their interests in their respective properties owned by each at the time of their marriage. They carefully agreed that the term "property" as used would include any other property "acquired by exchange of such property or purchase from funds now on hand, and any investment or reinvestment of same, as well as accruals, increase in value together with improvements and betterments, rents, royalties, profits and dividends arising therefore."

It is equally clear that the parties intended to exclude from the provisions of the contract any property acquired during the marriage by means other than the use of funds from the sale, exchange, or increments stemming from the property owned previous to the marriage. In other words, property acquired by means independent of any property or funds previously held by either party would be subject to inheritance by the survivor.

Doubt suggested by appellants as to the meaning of the phrase "as a result of their joint and mutual efforts" must be resolved in favor of the surviving spouse. The right to inherit will not be cut off by a strained interpretation of language used in a antenuptial contract. (*In re Estate of Johnson*, supra.)

In the absence of any evidence tracing the funds used to acquire the property in question, it must be said that it was acquired by the parties jointly during their marriage. The meaning of the phrase "acquired by the parties jointly during their marriage" was considered in *Forrey v. Forrey*, 167 Kan. 77, 204 P. 2d 725, wherein it was said that jointly acquired property included all property acquired during a marriage, excluding only that previously owned or acquired by funds in the hands of a party prior to the marriage.

To give the effect to the contract and deed recitations proposed by appellants would result in barring Ernest's right of inheritance in the after acquired property.

While a surviving spouse may bar or limit his or her right of inheritance by an antenuptial contract the intent to do so must clearly appear. The right to inherit is a statutory right and favored by the law. Before an antenuptial contract will be construed to cut off such right the intended result must clearly and unmistakably appear from an examination of the language used, and no strained interpretation of language will be permitted to strip a surviving spouse of his or her inheritable interest in the property of the deceased spouse. (*In re Estate of Johnson*, supra; *In re Estate of Place*, 166 Kan. 528, 203 P. 2d 132; *In re Estate of Troemper*, 160 Kan. 464, 163 P. 2d 379; *Bemarkt v. Prouty*, 132 Kan. 228, 294 Pac. 890; *McVicar v. McVicar*, 128 Kan. 394, 278 Pac. 36.)

The same principles are applicable to the statutory allowance of a surviving spouse. In the case of *In re Estate of Place*, supra, it was held:

"In order that an antenuptial contract be construed as a waiver by a widow of her right to a statutory allowance from her deceased husband's estate, such waiver must clearly appear from the contract or be clearly deducible therefrom." (Syl. § 4.)

With respect to the real and personal property involved in this appeal we hold, under the evidence presented, that the rights of Ernest, as surviving spouse, to his statutory allowance and to inherit was not barred by the terms of the antenuptial contract or by the recitations set out in the several deeds referred to.

Concerning the items of personal property, appellants argue the evidence established that decedent purchased virtually all of the items inventoried under the caption "Furniture and Household Goods." They say the evidence shows that such items were in fact acquired by the separate funds given to Lucile by her daughter, Ebby, one of the appellants, and thus the provisions of the contract would apply so as to bar Ernest's rights to inherit and to his statutory allowance.

Appellants offered the testimony of Ebby who testified that her mother collected the items with the intention of opening an antique shop. Ebby further testified that she furnished the money for the purchase of most of the antiques. Her testimony was supported to some extent by the testimony of Evelyn Britt, a Junction City antique dealer. None of the testimony was supported by any documentary evidence such as cancelled checks or money order receipts.

Ernest testified that he purchased some of the items himself; that all were purchased from joint funds; that the items were kept all over the house, some located in each room; and that he had a personal interest in them. He testified that of all the items listed only one bed, one dresser, one chest of drawers, and, perhaps, a radio had been owned by Lucile prior to their marriage.

Personal property was included in the trial court's findings, that all of the property involved was acquired subsequent to the marriage and that there was no tracing of funds. In view of Ernest's testimony and the failure of appellants to show any tracing of funds other than by parol testimony, unsupported by documentary evidence, the findings of the trial court cannot be disturbed. The point is resolved by the familiar rule that findings of fact made by a trial court, supported by competent evidence, will not be disturbed on appeal. (*Bowen, Administrator v. Hathaway*, 202 Kan. 107, 446 P. 2d 723; *Atkinson v. Herington Cattle Co. Inc.*, 200 Kan. 298, 436 P. 2d 816; *Martin v. Martin*, 200 Kan. 60, 434 P. 2d 833.)

Lastly, appellants complain of the burden put on them by the conditions imposed by the trial court in connection with the supersedeas bond required of Ernest on request of appellants with their motion for stay of judgment.

Conditions to be prescribed for the security of the adverse party when judgment is stayed are within the discretion of the trial court. (K. S. A. 60-262 [b])

Here the trial court allowed Ernest what were found to be his household furnishings and effects under K. S. A. 59-403 (now 1969 Supp.), but then on the request of appellants he was required to post bond before he could retain and use the furnishings allowed to him. Under such circumstances the imposition of the conditions on appellants in connection with the bond did not amount to an abuse of discretion.

We turn next to the cross-appeal wherein Ernest claims he was entitled to all of the household items as the statutory allowance of a surviving spouse under the provisions of 59-403, *supra.*

First, appellants claim Ernest forfeited his right to cross-appeal since he took possession of the items awarded to him under the amendments to finding No. 20 and thus acquiesced in the judgment. In view of our disposition of the cross-appeal it is unnecessary to dwell at length on this question. It will suffice to say that, under the circumstances shown to exist, we do not believe the action of Ernest in retaining the household furnishings awarded to him is conduct so inconsistent as to work an estoppel of his right to appeal. (*James v. Amrine,* 157 Kan. 397, 140 P. 2d 362.)

Turning to the merits of the cross-appeal, in short Ernest claims the trial court attempted to rewrite provisions for a spouse's allowance under 59-403, *supra,* by limiting his allowance to those items specified in the amendments to finding No. 20.

The items involved here, in order to be included in a spouse's allowance, must fall into the category of "furniture and household goods, utensils and implements *used* in the home," (emphasis supplied), set out in 59-403 (1).

There was evidence offered by appellants that most of the items were not used in the home because (1) they were not functional or adaptable to household use and (2) because of their character as antiques and their exceptional value they would not be used in a home.

The trial court found the items, other than those allowed to Ernest, to be unique in character, were collected by Lucile as antiques, and further to consist, in some instances, of many duplications of the same item such as several sets of dishes. The court concluded that this kind of property did not fall within the purview of the statutory allowances.

As heretofore noted, the testimony of Ernest was contrary to

that of appellants' witnesses. Thus, an issue of fact was presented to be determined by the trial court.

We believe the determination arrived at by the trial court was equitable and supported by competent evidence. There was evidence that the items were acquired for a purpose other than for household use. From the number and nature of the articles enumerated, it is obvious they could not all be utilized in household use. We do not intend to say that everyday household use is necessary to establish an article as a household utensil within the purview of the statute, but we believe there is evidence here to justify the distinction made by the trial court.

Generally speaking, a surviving spouse's right to allowances is favored under the law and statutes dealing with the subject are entitled to liberal construction. (31 Am. Jur. 2d, Executors and Administrators, § 324, pp. 161, 162; *Breen v. Davies*, 94 Kan. 474, 146 Pac. 1147.) The rule stated, however, does not require a trier of facts to accept per se and irrefutably the evidence of a surviving spouse and reject entirely and without consideration the evidence of one opposing the claim of such surviving spouse.

In his cross-appeal brief, Ernest cites the case of *Lupton v. Merchants Nat'l Bank*, 140 Kan. 615, 38 P. 2d 125, wherein the court held a library consisting of expensive and unusual books to be a family library. "Family library" is singularly enumerated as one of the items to be set off under the provisions of 59-403 (1), *supra*. The question here is whether the articles described as antiques fall in the broader category of household goods and utensils used in the home. In view of appellants' evidence as to the character of the articles in question and that they were acquired and owned for a purpose other than household use, the issue was properly submitted to the trier of facts.

From what has been said it therefore follows that all orders and judgment appealed from the trial court should be and they are hereby affirmed.